[No. B027131. Second Dist., Div. One. Nov. 10, 1987.]

JOE NAKASH et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
GEORGES MARCIANO et al., Real Parties in Interest.

**COUNSEL**

Jones, Day, Reavis & Pogue, Allyn O. Kreps, John W. Cochrane, Eric J. McFadden, Erwin N. Griswold, Kevin D. McDonald, Paul, Weiss, Rifkind, Wharton & Garrison, Martin London and Richard A. Rosen for Petitioners.

No appearance for Respondent.

Freedman, Tucker & Baum, Gary A. Freedman, Paul H. Samuels, Hufstedler, Miller, Carlson & Beardsley, Gavin Miller, Otto M. Kaus, Emily F. Bresler, Gary Plessman and Tony L. Richardson, Alschuler, Grossman & Pines, Marshall B. Grossman, Robert A. Shlachter, John A. Schwimmer, Arthur R. Miller for Real Parties in Interest.

**OPINION**

## INTRODUCTION

**HANSON (Thaxton), J.**—Petition for writ of mandate. Petitioners (the Nakash brothers, Joe, Ralph and Avi) seek an order of this court directing respondent superior court to vacate its order of March 27, 1987, denying summary adjudication of specified issues in consolidated cases Nos. C

524347 and C 628588, and to enter instead an order granting such adjudication.

Division 3 of this court issued an alternative writ on May 12, 1987. On June 16, 1987, the California Supreme Court ordered that the matter be transferred to Division 1 of this court. The petition is opposed by real parties in interest the Marcianos (brothers Georges, Maurice, Armand and Paul) and a California corporation, Guess? Inc. (hereinafter Guess). We deny petitioners relief and discharge the alternative writ.

### FACTUAL AND PROCEDURAL HISTORY

Briefly, the pertinent facts giving rise to this writ proceeding are: In 1981 the Marcianos formed Guess, which has been successful in the design, production and sale of high-fashion clothing, including "designer jeans." Petitioners, the Nakashes, declare that net profits in 1986 were $110 million.

The Marcianos owned 100 percent of Guess stock until 1983, when they negotiated some agreements with the petitioners, the Nakashes, owners of Jordache Enterprises, Ltd., a Delaware corporation also engaged in the design, production and sale of clothing, including jeans. The Marcianos have asserted that the Nakashes induced them to sell stock in the rapidly expanding Guess by promising to apply organizational and financial skills in a manner which would benefit Guess.

On July 25, 1983, the parties executed a stock purchase agreement and a shareholders' agreement in writing; the Marcianos have asserted that they made additional agreements with the Nakashes which were not in writing. Petitioners, the Nakashes, acquired 51 percent of the stock of Guess.

By December 13, 1983, however, the Marcianos had filed their first amended complaint in federal district court seeking rescission of the July 1983 transaction with the Nakashes due to fraud and failure of consideration based upon fraudulent conduct. The action was entitled Georges Marciano et al. v. Joe Nakash et al., No. CV 83-7828-CBM. The complaint set forth the facts concerning the stock purchase and related agreements and specified certain financial and other services it was claimed the Nakashes had promised to provide in developing Guess. It was further alleged that the Nakashes had not performed as promised and were in fact attempting to damage Guess's reputation in the fashion industry because of the Nakashes' ownership of a competitor, Jordache.

On January 12, 1984, the three Nakashes and three of the Marcianos (Georges, Maurice and Armand) signed a one-page document which stated:

"We, the Nakash Brothers, agree to give the Marciano Brothers one percent of our stock, i.e., Avi Nakash will give to Maurice Marciano one percent, and release the Marcianos from any claims as of this day. [¶] We, the Marciano Brothers, agree to drop the lawsuit and release the Nakash Brothers from any claim as of today. [¶] This agreement should take effect upon the signing of this document by the Board of Directors of Guess? Inc."

After the release was signed, the Marcianos moved to dismiss the federal suit; it was dismissed with prejudice on January 19, 1984. From that time to the present, the petitioners, the Nakashes, have owned 50 percent of Guess and real parties, the Marcianos, have owned the other 50 percent.

On November 29, 1984, the Marcianos filed the present state court action; it was entitled Georges Marciano et al. v. Joe Nakash et al., Super. Ct. Los Angeles County, No. C 524347. It, too, sought rescission of the July 1983 agreement, alleging fraud and failure of consideration based upon fraudulent conduct. It claimed breach of fiduciary duty by the Nakashes. The complaint contained 23 causes of action, including several causes of action seeking the statutory remedies available to private litigants pursuant to the federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. section 1961 et seq., e.g., the divestiture of stock ownership by those determined to be "racketeers" within the meaning of the statute.

The fifth amended complaint, in essence, accused the Nakashes of engaging in a conspiracy to acquire Guess, to misappropriate its designs, manner of production and sale of high-fashion garments, and to terminate (squeeze out) the Marcianos' interest in Guess. The complaint detailed the Nakashes' business practices and activities directed toward these objectives. It specifically described an occurrence known in the industry as "knock-off," wherein one garment company produces copies of the designs, fabrics or style of a successful line of another company, for economic gain. It was alleged that the Nakashes, by virtue of the interest they had acquired in Guess, had, through Jordache and related corporations, misappropriated Guess' designs, fabrics and styles and had produced "knock-offs," primarily in Hong Kong. These appeared, and their appearance became known to the Marcianos in the spring of 1984, after the dismissal of the federal suit had taken place.

Other asserted business practices of the Nakashes were described, including their custom of transacting important business orally without witnesses present; their scheming to evade United States taxes; their use of the mails and other communication to engage in fraud; their manipulation of international markets, quotas, and exchange rates. The totality of the Nakashes'

conduct, it was asserted, was intended to damage and had damaged Guess, and was continuous in nature after the January 1984 release executed by the parties and the dismissal of the federal suit.

While this litigation was pending, three Nakashes and three Marcianos sat as directors on the Guess corporate board. By order of respondent superior court, the Honorable Richard Schauer, a retired presiding justice of Division 7 of this court, was appointed the provisional (and seventh) director of Guess on November 8, 1986. Thereafter, the board of directors of Guess withheld accumulated dividends of approximately $16.5 million on Guess stock belonging to the petitioners, the Nakashes, and interpleaded the dividends. It was claimed that the ownership of the Nakash holdings was at issue—and thus the payment of dividends as well—in the present litigation. The Nakashes sought and were denied an injunction compelling payment of the dividends to them.

When the Nakashes sought summary judgment or summary adjudication of issues, their major concern (apart from terminating the litigation in its entirety) was limitation of the *remedies* available to real parties; they sought to remove from the complaint the possibility that the July 1983 stock purchase agreement would be rescinded or that an adverse judgment would affect their ownership of Guess stock. Hence, the motion relied upon the doctrine of res judicata, and the proposition that private RICO litigants may not obtain equitable relief.

Petitioners argue that the Marcianos should be barred from seeking rescission of the stock purchase agreement of July 1983 because *all* claims arising from that agreement had been effectively disposed of by the settlement and release executed by the parties in January 1984—which in turn had led to the dismissal, with prejudice, of the federal action seeking rescission of the same agreement. Petitioners contended that having made the deal which enabled the Marcianos to receive 1 percent of Guess stock from petitioners in return for ending the federal litigation, the Marcianos gave up their right to attempt to rescind the stock purchase agreement at any future time.

In opposing the motion, the Marcianos argued that the state action, the present litigation, arose primarily from events which had occurred or become known to them after the release and dismissal of January 1984.

In declarations filed in opposition to the motion, Maurice and Armand Marciano declared that they had not intended, when they executed the January 12, 1984, release, to include claims for wrongdoing of which they had no knowledge at the time. Paul Marciano also filed a declaration stating

he had no knowledge, when his brothers executed the release, of any "knock-off" of Guess garments by Jordache and other related business entities. Real parties claimed that the Marcianos had discovered the asserted "knock-offs" by the Nakashes in the spring of 1984.

On March 27, 1987, the trial court denied summary judgment and the summary adjudication of specified issues as requested by the Nakashes (in most instances). The trial court's five-page minute order made the following pertinent determinations:

(1) Review of the pleadings in the federal district court case and the pleadings in the present case demonstrated that the federal case "was based upon different allegations . . . was based upon different theories, involved different evidence and rights, did not arise from the same 'transactional nucleus' of facts, and constituted different causes of action;

(2) "As a matter of law, the Marcianos' claims for rescission set forth in their first, second and third causes of action of the Fifth Amended Complaint in this action are not barred by claim preclusion [res judicata] as a result of the dismissal with prejudice of the federal complaint; . . ."

(3) "As a matter of law, the Marcianos have stated valid causes of action for rescission based upon fraudulent representations; . . ."

(4) "As a matter of law, a private party may state a cause of action for equitable relief [as the Marcianos had done] pursuant to the federal RICO statute. . . ."

(5) Finally, "there is a triable issue of fact as to the scope of the January 12, 1984, release agreement. This issue of material fact is established by the following evidence: Exhibit B to the Declaration of Robert Sutcliffe [the one-page release set forth earlier herein]; Declaration of Maurice Marciano, [¶] 32; Declaration of Armand Marciano, [¶] 3; Declaration of Paul Marciano, [¶] 3."

The order denying summary judgment was challenged in this court by the Naskashes' petition for a peremptory writ, as provided by Code of Civil Procedure section 437c, subdivision (*l*).

STANDARD OF REVIEW

This writ proceeding follows summary judgment determination in the trial court. ■ The principles applicable to such determination have been summarized in *Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210

Cal.Rptr. 762, 694 P.2d 1134], as follows: "The summary judgment proce-dure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.] [¶] 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Cita-tion.] . . . '[I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' [Citation.]"

In the case at bench, while primarily the parties addressed themselves below to questions of law, as will be explained, there was also an issue involving the existence of controverted facts.

### PETITIONERS' CONTENTIONS

Petitioners contend that the trial court decided incorrectly that the feder-al action and the subsequent state action were sufficiently different in nature and in scope to preclude use of the doctrine of res judicata as a defense to the first three causes of action of the fifth amended complaint in the state action or any other part thereof.

Petitioners also contend that the trial court erred in declaring that a private RICO litigant can obtain equitable relief (including injunctive re-lief). Petitioners and real parties both regard the settlement and release of January 1984 as conclusively binding on the parties to that agreement, and minimize the legal consequences attached to the nature of the agreement and the circumstances under which it was executed.

We address these contentions, taking the last one first.

### DISCUSSION

### I

■ In the case at bench, the trial court, at the conclusion of its minute order, identified the *scope* of the January 12, 1984, settlement agreement as one which raised triable issues of fact. The declarations filed in opposition to the summary judgment motion asserted that the Marcianos who agreed to the settlement were not intending to release claims about which they knew nothing or claims that might arise in the future.

■ "Where the dismissal [of the previous action] is by consent or stipulation of both parties after a compromise or settlement of the case, it is intended to operate as a retraxit, and the judgment, entered with prejudice, will bar a new action." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgments, § 225, pp. 662-663.)

As was explained in *Neil Norman, Ltd.* v. *William Kasper & Co.* (1983) 149 Cal.App.3d 942, 948 [197 Cal.Rptr. 198], however, "[a] finding on the scope of the settlement agreement was material to the determination on the issue of retraxit." ■ *Norman* involved serial litigation by parties concerning a business agreement, and the reviewing court's observation on the settlement in *Norman* is equally applicable here; the issue of the scope of the settlement agreement is factual and must be resolved before that to which res judicata assertedly applies can be determined. On this basis alone, a grant of summary judgment in the case at bench would have been improper.

## II

We are not unmindful of the amount of time and effort the parties have spent researching and arguing the issue of the extent to which, if any, the doctrine of res judicata precludes real parties, the Marcianos, from pursuing their claims for relief in this second action in this state. Recognizing the need for judicial economy, we will discuss application of the doctrine of res judicata (claim preclusion) on the assumption that the settlement and release executed by the Marcianos in January 1984 encompassed all claims known to them or which reasonably could have been known to them as of the date of execution of the settlement agreement.

Even assuming such a broad interpretation of the settlement agreement, we have concluded that the doctrine of res judicata would not operate to bar the Marcianos from the prosecution of any cause of action stated in their fifth amended complaint.

■ It is elementary that "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy. It seeks to curtail multiple litigation causing vexation and expense to the *parties* and wasted effort and expense in *judicial administration.*" (7 Witkin, Cal. Procedure, *supra,* Judgment, § 188, p. 621, italics in text.) We have already indicated that the "former judgment" may be a dismissal with prejudice arrived at by way of settlement by the litigants in the first action.

The doctrine of res judicata is a part of the common law of this state (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791 [126 Cal.Rptr. 225, 543 P.2d

593]) and also is reflected in such statutes as Code of Civil Procedure section 1908.

Restatement Second of Judgments views the doctrine as a bar or merger applicable to subsequent litigation between the same parties concerning the same controversy with very few exceptions. The Restatement's approach is based on the assumption that there has been an opportunity in the first litigation for a fair and full hearing of the claim asserted. Once that opportunity has been afforded, the Restatement Second asserts, fairness dictates that the controversy in question be put to rest.

What constitutes the "same controversy" is a complex conceptual and practical problem in applying the doctrine. Analysis has shifted from identification of a primary right upon which only one claim is allowed to determination of the existence of a transaction involving a nucleus of facts upon which only one claim is allowed. (Rest.2d Judgments, § 24, com. (*a*).) It is generally conceded that the line dividing those situations compelling application of the doctrine from those which do not cannot be precisely drawn. (Rest.2d Judgments, § 24, com. (*b*).)

The transactional approach was approved in *Costantini* v. *Trans World Airlines* (9th Cir. 1982) 681 F.2d 1199, certiorari denied 459 U.S. 1087 [74 L.Ed.2d 932, 103 S.Ct. 570], the second of successive actions against defendant TWA arising from plaintiff Costantini's attempt to establish branch offices of a travel agency in Montgomery Ward stores. Plaintiff asserted in both suits that defendant TWA had, in conspiracy with others, thwarted this business venture.

In *Costantini,* after the federal appeals court had applied the following criteria, the application of res judicata barred the second suit: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. [Citation.] The last of these criteria is the most important." (*Costantini* v. *Trans World Airlines, supra,* 681 F.2d 1199, 1201-1202; fn. omitted.)

*Costantini* pertains to the case at bench because of its discussion of res judicata criteria, and because it held that California law applied to the dispute and referred back to federal standards in determining the application of res judicata.

Two recent California cases have permitted successive suits between litigants who engaged in far less complicated business transactions than the

one before us. (See e.g., *Neil Norman, Ltd.* v. *William Kasper & Co., supra,* and *Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390 [177 Cal.Rptr. 398].) In 7 Witkin, California Procedure, *supra,* Judgments, section 246, page 685, states that in California "[i]f the second suit is on a different cause of action, as where there are successive breaches of an obligation, or separate and distinct torts, or new rights accrued since the rendition of the former judgment, there is no merger. [Citations.]"

The case at bench differs from *Costantini, Norman* and *Sawyer* in a crucial respect. *Costantini, Norman* and *Sawyer* involved less complicated business transactions which ended within a fixed time frame. The case at bench concerns litigants who are engaged in a fiduciary and business relationship which has been structured by the parties' agreement to extend beyond any fixed termination point. Petitioners' attempt to characterize their business and fiduciary relationship with real parties as one which may be viewed as one transactional set of facts, disposed of by the end of the federal litigation, ignores present realities.

The situation in which the petitioners and real parties find themselves is not unlike that of a marriage, where res judicata has had limited application, or of parental status where the courts have traditionally recognized the need for serial adjudication, dependent upon changes in circumstance.

The stock purchase and other agreements executed by the petitioners, the Nakashes, and real parties, the Marcianos, in July 1983 gave rise to a fiduciary and business relationship which conferred rights and duties continuing as long as the relationship itself. Not the least of the rights and duties established by the agreement was the covenant of good faith and fair dealing, the duty to refrain from conduct which would deprive any party to the contract from obtaining its benefits.

Res judicata was never intended to be used as a vehicle for forever "immunizing" any party in a continuing business relationship from liability for continuous or recurrent breaches of contract, conspiracy directed toward such breaches, or for continuous or recurrent tortious misconduct. All have been pleaded here, by real parties. It is fair to say that the first action, in federal court, differed greatly in scope as well as in the specific allegations of petitioners' wrongdoing. If res judicata may be used to bar future inquiry into such misconduct, no party engaged in a business and fiduciary relationship in this state would attempt settlement negotiations concerning business differences because of the risk of giving too much future leverage to the other side of the dispute.

Petitioners contend that the Marcianos gave up forever the right to rescind the stock purchase transaction when they agreed to drop the federal

suit in January 1984. We disagree. █ Rescission is *not* a cause of action; it is a remedy. (Civ. Code, § 1689; *Crofoot Lumber* v. *Thompson* (1958) 163 Cal.App.2d 324 [329 P.2d 302]; and see 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 797, pp. 719-720.) █ Just as an agreement may produce more than one primary right, or produce more than one transactional nucleus of facts, the conduct of parties to the agreement may provide the evidentiary basis for obtaining rescission on more than one ground, on more than one occasion. The transactional nucleus of facts which generated the second complaint occurred *after* the first judgment.

The trial court correctly determined that in the case at bench while some of the *general* circumstances of the successive suits were the same, the specific, pertinent transactional nucleus of facts was not; the second suit would require the production of substantially different proof. We find no error in the trial court's denial of summary adjudication in this case.

### III

In the 16th through the 19th causes of action in the 5th amended complaint, the Marcianos and Guess have alleged that the Nakashes have engaged in "racketeering" as defined by the RICO, 18 United States Code, section 1961 et seq. Specific allegations have been pleaded concerning evasion of United States taxes and the use of the mails and wires for illegal purposes.

Real parties have sought various kinds of relief expressly provided by RICO, including treble damages and attorney fees. (18 U.S.C., § 1964(c)). Real parties have also sought "an order requiring divestment of the Nakashes' interest" in Guess and a subsidiary, Gasoline (18 U.S.C., § 1964(a)).

Petitioners challenged these causes of action below on the ground that they could not afford real parties the equitable remedies they sought, pursuant to current interpretation of congressional intent in enacting RICO in the federal cases.

As the trial court recognized, the resolution of the problem of equitable remedies in a private RICO action has not yet occurred.

In *Sedima, S. P. R. L.* v. *Imrex Co.* (1985) 473 U.S. 479 [87 L.Ed.2d 346, 105 S.Ct. 3275], the United States Supreme Court has declared that RICO was subject to broad interpretation to effectuate its "remedial purposes." 473 U.S. at page 498 [87 L.Ed.2d at page 360]. In *Agency Holding Corp.* v. *Malley-Duff & Associates, Inc* . (1987) 483 U.S. 143 [97 L.Ed.2d 121, 107

S.Ct. 2759], the United States Supreme Court focused on the appropriate statute of limitations for RICO actions, emphasizing the need for uniformity.

The lower federal courts have considered the issue of whether private RICO litigants may obtain equitable relief and the results are far from uniform. In *Religious Technology Center* v. *Wollersheim* (9th Cir. 1986) 796 F.2d 1076, certiorari denied (1987) 479 U.S. 1103 [94 L.Ed.2d 187, 107 S.Ct. 1336], the Ninth Circuit concluded that injunctive relief was not available to private RICO litigants; in *Bennett* v. *Berg* (8th Cir. 1982) 685 F.2d 1053, 1064, on rehearing (1983) 710 F.2d 1361, certiorari denied *Prudential Ins. Co.* v. *Bennett* (1983) 464 U.S. 1008 [78 L.Ed.2d 710, 104 S.Ct. 527], the reviewing court left the issue open but raised the possibility, among others, that a court has general equitable powers to fashion a remedy appropriate to a given case.

In *Cianci* v. *Superior Court* (1985) 40 Cal.3d 903 [221 Cal.Rptr. 575, 710 P.2d 375], the California Supreme Court concluded that California courts have concurrent jurisdiction with federal courts to entertain suits attempting to enforce civil liability pursuant to RICO. While the *Cianci* court expressed no view about the issue of the availability of equitable remedies, i.e., whether pursuant to California law equitable relief would be afforded to a litigant after a proper evidentiary showing, *Cianci* did observe the state court judges could be expected to be familiar with state law and violations thereof, often involved in the pleading of a RICO matter.

*Cianci* described the "traditional reluctance" of that court to determine important issues of statutory interpretation by writ at the pleading stage. (*Id.,* at 908, fn. 2.) We are equally reluctant to render a broad statutory interpretation based upon the record before us.

We conclude that it would be premature for us to hold, as a matter of law, that no action is available in our state courts for a RICO plaintiff who seeks, as one remedy among a number of remedies, one which may not ultimately be deemed available pursuant to the ascertained intent of Congress. Indeed, it would be premature to bar a RICO plaintiff from seeking any form of appropriate relief.

If a California court determines, based upon a full evidentiary record, that real parties need the assistance of equity to obtain relief (and maintain the integrity of the marketplace), the issue of that court's powers to fashion an appropriate remedy may then be addressed more meaningfully upon appellate review.

## DISPOSITION

The petition for writ of mandate is denied. The alternative writ is discharged.

Spencer, P. J., and Devich, J., concurred.

A petition for a rehearing was denied December 7, 1987, and petitioners' application for review by the Supreme Court was denied February 3, 1988.