[No. B032887. Second Dist., Div. Three. Feb. 7, 1989.]

JAY MARK FINEBERG, Plaintiff and Appellant, v.
HARNEY & MOORE et al., Defendants and Respondents.

## COUNSEL

Sanders, Firestein & Janeway, Marshall C. Sanders and Thomas H. Janeway for Plaintiff and Appellant.

Harney, Drummond, Garza & Packer and Thomas Kallay for Defendants and Respondents.

## OPINION

**DANIELSON, Acting P. J.**—Plaintiff and appellant Jay Mark Fineberg appeals from the judgment entered in favor of defendants and respondents Harney & Moore and David M. Harney (Harney) in an action to recover contingent fees in excess of the limit imposed thereon by Business and Professions Code section 6146. The primary question presented by this appeal is whether a client may waive the provisions of the statute. We determine the statute was intended to further a significant public policy and that its protection cannot be waived, and reverse the judgment.

### FACTS

Plaintiff engaged Harney to represent him in connection with a medical malpractice action. The parties entered into a fee agreement dated November 23, 1981, which provided, in part: "2. Client has been advised of the provisions of the California Business and Professions Code § 6146 which, in part, provides as follows: '§ 6146. Limitations in amount [¶] '(a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional

negligence in excess of the following limits: '(1) Forty percent of the first fifty thousand dollars ($50,000) recovered.

" '(2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered.

" '(3) Twenty-five percent of the next one hundred thousand dollars ($100,000) recovered.

" '(4) Ten percent of any amount on which the recovery exceeds two hundred thousand dollars ($200,000).

" 'Such limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind.

" '(b) . . . .'

"Client has further been advised that attorneys are unwilling to accept representation herein under the provisions of said California Business and Professions Code § 6146, and client in order to obtain the services of said attorneys and in order to have action prosecuted as desired by client[ ], hereby waives the purported limitations on fees as set forth in said California Business and Professions Code § 6146, and hereby agrees to pay the fees as set forth in paragraph 3 below.

"3. That as sole compensation for services rendered by said attorneys, the client will pay them 40 percent of any money or property paid, received or collected by action, compromise, or otherwise . . . ."

The medical malpractice action was ultimately settled, one provider paying plaintiff $275,000, and a second provider paying him $25,000. After deducting costs, Harney took 40 percent of the recovery in accordance with the fee agreement. Thereafter, plaintiff requested a refund of $26,069.20, representing the amount by which the fee exceeded that permitted by statute. Harney refused to pay, and the present action ensued.

At trial, plaintiff testified he contacted Harney because the firm was recommended to him by his brother, an Arizona attorney. He was advised that the firm would not undertake to represent him unless he waived the protection of Business and Professions Code section 6146; he was also advised that the firm would bear the expense of properly preparing the case for trial. He conceded he agreed to waive the statutory provisions governing

contingent fee agreements, and that he did so because he wanted Harney to represent him. Plaintiff was pleased with Harney's handling of the case, as well as the settlement ultimately reached. However, he claimed Chris Matthews, of Harney, told him the fee would be 40 percent if the case went to trial, but only 33⅓ percent if the matter was settled out of court. He also claimed Matthews told him Harney was confident section 6146 was unconstitutional, and would soon be so ruled by the Supreme Court.

The trial court took judicial notice of the reputation and expertise of Harney and its predecessor firm. Harney proffered evidence establishing that the firm has overhead expenses, exclusive of costs advanced on cases, of $300,000 per month, employs three full-time in-house medical practitioners, advances all litigation costs, which in a case such as plaintiff's would generally amount to approximately $20,000, and aggressively pursues its cases, ordering all records and deposing all potential expert witnesses. In the opinion of Harney's legal expert, plaintiff could not have obtained comparable representation for a fee within the limits imposed by section 6146.

Harney claimed the maximum settlement value of plaintiff's case, if handled by a personal injury lawyer who did not specialize in medical malpractice cases, was $100,000, and that it was not economically feasible to conduct a proper practice in the field of medical malpractice with the fee restrictions imposed by section 6146.[1]

The trial court ruled (1) there was no public policy factor pertaining to the limitations on contingent fee agreements set forth in Business and Professions Code section 6146, and (2) plaintiff waived the protection of the statute, and entered judgment in favor of the defendants.

## DISCUSSION

Business and Professions Code section 6146 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). (Stats. 1975, Second Ex. Sess. 1975-1976, chs. 1, 2, pp. 3949-4007.) MICRA, "a sweeping statute that enacted, amended, or repealed several sections of the Business and Professions Code, the Civil Code, the Code of Civil Procedure, and the Insurance Code" (*Hathaway* v. *Baldwin Park Community Hospital* (1986) 186 Cal.App.3d 1247, 1250 [231 Cal.Rptr. 334]), was enacted in an extraordinary legislative session called by the Governor in response to "a perceived crisis caused by rapid increases in medical malpractice insurance premiums." (*Ibid.*) In his proclamation, the Governor called for the Legislature

---

[1] We note that Business and Professions Code section 6146 has since been amended to permit more generous fees.

to " 'enact laws which will change the relationship between the people and the medical profession, the legal profession and the insurance industry, and thereby reduce the costs which underlie these high insurance premiums.' " (*Ibid.*) The Governor asked the Legislature to consider, among other things: " '8. Establishment of reasonable limits on the amount of contingency fees charged by attorneys. [¶] 9. Elimination of double payments ("collateral sources"); institution of periodic payments and reversionary trusts; limitation of compensation for pain and suffering while insuring fully adequate compensation for all medical costs and loss of earnings; and setting a reasonable statute of limitations for the filing of malpractice claims.' " (*Ibid.*)

As the *Hathaway* court observed, "[t]he preamble to MICRA states, in part: 'The Legislature finds and declares that there is a major health care crisis in the State of California attributable to skyrocketing malpractice premium costs and resulting in a potential breakdown of the health delivery system, severe hardships for the medically indigent, a denial of access for the economically marginal, and depletion of physicians such as to substantially worsen the quality of health care available to citizens of this state. The Legislature, acting within the scope of its police powers, finds the statutory remedy herein provided is intended to provide an adequate and reasonable remedy within the limits of what the foregoing public health and safety considerations permit now and into the foreseeable future.' (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007.)" (*Hathaway* v. *Baldwin Park Community Hospital, supra,* 186 Cal.App.3d at p. 1250.)

Our Supreme Court has upheld MICRA's provisions (1) calling for periodic payment of "future damages" that are $50,000 or greater (Code Civ. Proc., § 667.7; *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 364 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233]), (2) prohibiting "collateral sources" from obtaining reimbursement from medical malpractice defendants or their insurers (Civ. Code, § 3333.1, subd. (b); *Barme* v. *Wood* (1984) 37 Cal.3d 174, 180 [207 Cal.Rptr. 816 [689 P.2d 446]), (3) limiting damages for noneconomic losses to $250,000 (Civ. Code, § 3333.2, subd. (b)) and permitting a defendant to introduce evidence of benefits a plaintiff has received from a collateral source (Civ. Code, § 3333.1, subd. (a)). (*Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 158-159 [211 Cal.Rptr. 368, 695 P.2d 665]). The court has also held (4) that the statute here in question, Business and Professions Code section 6146, limiting the amount of fees an attorney may collect when representing a plaintiff in a medical malpractice action on a contingency basis, is rationally related to the legislation's legitimate objective and therefore does not violate the due process or equal protection clauses. (*Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931-932 [211 Cal.Rptr. 77, 695 P2d 164].)

In each of these cases, the court recognized that the Legislature's purpose in enacting MICRA was to protect California's health care delivery system by reducing the cost of medical malpractice insurance. (See also *Miller* v. *Sciaroni* (1985) 172 Cal.App.3d 306, 309-310 [218 Cal.Rptr. 219].)

In *Hathaway, supra,* Division One of this court concluded that Business and Professions Code section 6146 prohibits a trial court from awarding attorneys' fees in excess of the rates provided therein. *Hathaway* is similar to the present case, in that the clients petitioned the court, seeking permission to pay their attorney one-third of the amount they recovered in the case, rather than the much lower amount prescribed by the statute, thus essentially waiving the protection of the statute. (*Hathaway* v. *Baldwin Park Community Hospital, supra,* 186 Cal.App.3d 1247, 1249.) Also similar is *Roa* v. *Lodi Medical Group, Inc., supra,* 37 Cal.3d 920, where the plaintiffs made a contingency fee arrangement with their counsel to pay him 25 percent of the amount recovered by their minor son for injuries suffered as a result of negligent treatment and care during his birth. Following settlement, plaintiffs requested the court to approve payment in accordance with their agreement, claiming section 6146 was unconstitutional on due process, equal protection and separation of powers grounds. As the court pointed out in that case, section 6146 "does not in any way abrogate the right to retain counsel, but simply limits the compensation that an attorney may obtain when he represents an injured party under a contingency fee arrangement." (*Id.* at p. 926.) With respect to the *Roa* plaintiffs' argument that section 6146 is invalid "because the authorized fees are so low that in practice the statute will make it impossible for injured persons to retain an attorney to represent them" (*id.* at p. 928), the court pointed out that the plaintiffs had made "no showing to support their factual claim" (*ibid.*), and "[f]urthermore, a comparison of the fees permitted by section 6146 with the fees authorized under . . . numerous [other] statutory schemes noted [in the decision] suggests that section 6146's limits are not unusually low." (*Ibid.*) The court concluded that it could not "hold that the amount of the fees permitted renders the statute unconstitutional on its face." (*Ibid.*)

█ In the present case, Harney attempted to make a factual showing that the fee limitations in effect at the time of its representation of plaintiff would preclude retention by injured persons of adequate counsel. Implicit in the testimony of both David Harney and his expert is their assumption either that no lawyer would undertake representation of medical malpractice plaintiffs under the statutory fee limitation, or that lawyers engaged in that practice would lower the standard of representation afforded medical malpractice clients because of the fee limitation. The first of these assumptions is purely speculative; the second assumes a willingness on the part of medical malpractice lawyers, as a group, to violate their duty to their

clients. We reject both assumptions, and find no deprivation of the right to counsel by reason of the statutory provision in question.

We also reject Harney's claim that the Legislature intended to permit waivers of Business and Profession Code section 6146. We find nothing in the legislative history of section 6146 to suggest an intent to make the statute voidable. The June 12, 1975, amendment to which Harney refers in its brief, which was deleted by a further amendment on June 27, 1975, permitted, as had two previous versions of the statute, contingency fee agreements containing terms other than those prescribed by the fee schedule set forth in subdivision (a) of section 6146, but provided that such a contract "is void unless such contract is approved by the court in which the action is pending." In deleting this version of subdivision (b) of the section the Legislature did not make such agreements voidable, rather than void; it eliminated them altogether.

Harney also relies on Business and Profession Code section 6147, requiring, in subdivision (a), that certain provisions be included in contingency fee agreements, and providing, in subdivision (b) that "[f]ailure to comply with any provision of this section renders the agreement voidable at the option of the plaintiff, and the attorney shall thereupon be entitled to collect a reasonable fee." Among the recitals required by subdivision (a) are the following: "(4) Unless the claim is subject to the provisions of Section 6146, a statement that the fee is not set by law but is negotiable between attorney and client. [¶] (5) If the claim is subject to the provisions of Section 6146, a statement that the rates set forth in that section are the maximum limits for the contingency fee agreement, and that the attorney and client may negotiate a lower rate." Contrary to Harney's assertion, section 6147 makes abundantly clear the intent of the Legislature to preclude contingency fee agreements providing for rates in excess of the limits set forth in section 6146; it is the failure to recite this which renders an agreement voidable under subdivision (b) of section 6147.

Finally, the Legislature expressed its purpose in enacting MICRA, and that purpose is a public one, i.e., reduction of medical malpractice insurance premium costs to ensure continued delivery of quality health care to the citizens of this state. "[A] law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.)

We conclude there is nothing in the statutory scheme, or its legislative history, indicating that the Legislature intended to permit waiver of the provisions of Business and Professions Code section 6146 by parties to a contingency fee agreement in a medical malpractice case, and moreover, that such waiver is precluded by Civil Code section 3513. (See *Waters* v.

*Bourhis* (1985) 40 Cal.3d 424, 439, fn. 15 [220 Cal.Rptr. 666, 709 P.2d 469]; *Shepherd* v. *Greene* (1986) 185 Cal.App.3d 989, 992 [230 Cal.Rptr. 233].)

## Decision

The judgment is reversed. Respondents are to bear costs on this appeal.

Arabian, J., and Croskey, J., concurred.

A petition for a rehearing was denied March 3, 1989, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 26, 1989. Mosk, J., was of the opinion that the petition should be granted.