[No. B071678. Second Dist., Div. Three. Sept. 1, 1994.]

CHRISTOPHER SCHULTZ, a Minor, etc., et al., Plaintiffs and Appellants, v.
DAVID M. HARNEY et al., Defendants and Respondents.

COUNSEL

Harry Frank Scolinos for Plaintiffs and Appellants.

David M. Harney, in pro. per., Thomas Kallay, Vincent McGowan, Esner, Marylander, Zakheim & Higa, Stuart B. Esner and Rosalyn S. Zakheim for Defendants and Respondents.

OPINION

CROSKEY, J.—Alan Schultz and Marcia Schultz, guardians ad litem for the minor, Christopher Schultz (collectively, Schultz) appeal from the judgment of the superior court dismissing Schultz's action for legal malpractice and fraud against David M. Harney, after Harney's demurrer to Schultz's first amended complaint was sustained without leave to amend. Harney, who was Schultz's attorney in an earlier action for medical malpractice, charged Schultz fees in excess of the fees allowable under Business and Professions Code section 6146, which limits the amount of attorney fees payable in such actions.[1] In the case at bench, Schultz sued to recover the excess amounts. Because the challenged fees had been expressly approved by the probate court in proceedings under Probate Code section 3601 to approve successive

---

[1]The relevant portions of Business and Professions Code section 6146 provided, prior to their amendment in 1987:

"(a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits:

"(1) Forty percent of the first fifty thousand dollars ($50,000) recovered.

"(2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered.

"(3) Twenty-five percent of the next one hundred thousand dollars ($100,000) recovered.

"(4) Ten percent of any amount on which the recovery exceeds two hundred thousand dollars ($200,000).

"The limitations shall apply regardless of whether the recovery is by settlement, arbitration, or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant, or a person of unsound mind. . . . [¶] . . . .

"(c) (1) 'Recovered' means the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and the attorney's office-overhead costs or charges are not deductible disbursements or costs for such purpose."

As these were the statutory provisions in effect at the time the parties entered into the contingency contract which Harney seeks to preserve they necessarily are the ones to be applied in this case. The subsequent amendments in 1987 (which substantially increased the allowable fees) may not be retroactively applied. (*Wienholz* v. *Kaiser Foundation Hospitals* (1989) 217 Cal.App.3d 1501, 1505-1507 [267 Cal.Rptr. 1].)

compromises of the minor Christopher's claims,[2] the court sustained Harney's demurrer, holding that Schultz's collateral attack was barred by the doctrine of res judicata.

We conclude that no basis for application of the doctrine of res judicata exists. The request for and allowance of an attorney's fee in connection with the approval of a minor's compromise is generally an uncontested proceeding which does not involve litigation between adversarial parties. That was certainly the case here. We also conclude that a cause of action for legal malpractice was sufficiently pled; therefore, the demurrer to that count was improperly sustained. The demurrer to the fraud count was well taken, but leave to amend should have been granted. Finally, we find it reasonably likely that Schultz can amend his complaint to state a cause of action for money had and received. We therefore reverse the order of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

Christopher Schultz was born on December 19, 1977, at Verdugo Hills Hospital. In the course of his delivery, he sustained perinatal asphyxia, which has resulted in central nervous system damage, scoliosis and severe mental retardation. His parents retained Harney to file a medical malpractice action against the hospital, Roberts Medical Group and Joseph Mutch, M.D., based upon the events surrounding Christopher's birth.

The record reflects that Harney, unwilling to handle the case for those fees which would result from the application of limitations contained in Business and Professions Code section 6146, sought and obtained a written waiver of those limitations from Schultz prior to the time he agreed to accept the case. In obtaining this waiver, Harney necessarily represented, expressly or impliedly, that those statutory provisions could legally be waived by a prospective medical malpractice client. Harney then undertook the representation and, over a four year period, effected settlements with the several defendants totaling $1.6 million.

On August 23, 1982, an order approving compromise of minor's claim was issued regarding Schultz's claim against Verdugo Hills Hospital. This order was for $650,000 for Christopher and $200,000 for his parents. Out of the total of $850,000, attorney fees of $212,500 and litigation costs of $15,288.84 were approved. On September 21, 1982, an order approving

---

[2]Probate Code section 3600 requires the probate court to approve any compromise of a minor's claim, if the compromise provides for the payment of money for the minor's benefit. Section 3601 provides that in making any order referred to in section 3600, the court must make a further order authorizing reasonable expenses, costs and attorney fees.

compromise of minor's claim was issued regarding the claim against Roberts Medical Group. This order was for $480,000 for Christopher and $20,000 for his parents, out of which $125,000 in attorney fees and $16,633.33 in litigation costs were approved. On January 21, 1986, an order approving compromise of minor's claim was issued with respect to the action against Joseph Mutch, M.D. This order was for a total of $250,000, including $62,500 in attorney fees and $10,680.16 in litigation costs.[3]

In September of 1990, Schultz learned through a social conversation with a medical doctor that the attorney fees which had been paid to Harney appeared too high. On March 11, 1991, Schultz consulted an attorney who informed him the fees he had paid to Harney exceeded the fees allowed under Business and Professions Code section 6146. On September 26, 1991, Schultz filed a complaint against Harney for malpractice, alleging that Harney had charged excessive and unlawful fees in the earlier medical malpractice action and had committed fraud by falsely representing that the fees he charged were legal.

Harney demurred to the complaint, contending that the issue of attorney fees in the medical malpractice was barred under the doctrine of res judicata. The trial court agreed and sustained the demurrer without leave to amend. This timely appeal followed.

### CONTENTIONS ON APPEAL

Schultz contends that: (1) the probate court acted in excess of its jurisdiction in 1982 and 1986 by awarding fees in excess of those permitted by Business and Professions Code section 6146; and (2) the trial court in this action erred in sustaining Harney's demurrer on res judicata grounds, because res judicata does not apply if: (a) the judgment or order in the prior proceeding was entered without jurisdiction; or (b) the prior order involved only a question of law and will cause injustice or adversely impact the public

---

[3]We note that the total fees thus paid to Harney, pursuant to these orders, were $400,000. Had the provisions of Business and Professions Code section 6146, as it then read, been applied to *each* of these *separate* settlements, the maximum fee to which Harney would have been entitled was $280,741. However, if the limitation on Harney's fee, as ultimately determined in this action, is calculated on the *total* recovery of $1.6 million, less the stated costs of $42,602, then the maximum to which he would be entitled is only $197,407. As this issue is not before us, we express no opinion on the proper manner of making the fee calculation under the peculiar facts of this case. (Cf. *Yates* v. *Law Offices of Samuel Shore* (1991) 229 Cal.App.3d 583, 588-590 [280 Cal.Rptr. 316].) Rather, we leave that problem to the initial consideration of the trial court on remand.

interest if relitigation is foreclosed; or (c) the parties were not adversaries in the prior proceeding.[4]

## DISCUSSION

### 1. *The Probate Court Had the Jurisdiction to Award Attorney Fees as Part of the Approval of the Minor's Compromises.*

█ We need not be detained long by Schultz's contention that the probate court was without jurisdiction to make fee awards in violation of Business and Professions Code section 6146. The probate court had jurisdiction over both the subject matter and the parties in those proceedings which led to the approval of the minor's compromises and their related fee awards. It is established beyond all reasonable dispute that a final judgment or order, even if erroneous or clearly contrary to a statute, is res judicata if the court had jurisdiction in the fundamental sense, that is, jurisdiction over the subject matter and the parties. (*Moffat* v. *Moffat* (1980) 27 Cal.3d 645, 655 [165 Cal.Rptr. 877, 612 P.2d 967]; *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728, 733 [13 Cal.Rptr. 104, 361 P.2d 712]; *Signal Oil and Gas Co.* v. *Ashland Oil And Refining Co.* (1958) 49 Cal.2d 764, 777 [322 P.2d 1]; *Pacific Mutual Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 725 [285 P.2d 636].) In short, a court has jurisdiction to be wrong. Thus, if the doctrine of res judicata were otherwise applicable the fact that the trial court's orders were erroneous would not aid Schultz.

### 2. *Schultz's Right to a Refund of Excessive Attorney Fees Is Not Barred by the Doctrine of Res Judicata.*

There is no question whatever that the 1982 and 1986 orders approving compromise of Christopher's claims were erroneous insofar as they awarded attorney's fees greater than are allowed by Business and Professions Code section 6146. (*Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925, 934 [211 Cal.Rptr. 77, 695 P.2d 164]; *Hathaway* v. *Baldwin Park Community Hospital* (1986) 186 Cal.App.3d 1247, 1253 [231 Cal.Rptr. 334].) Further,

---

[4]Schultz raised this last argument for the first time at oral argument. Ordinarily, points raised for the first time after the initial briefs are filed will not be considered, lest the other party be deprived of an opportunity to respond. (*Neighbours* v. *Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788]; see generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, pp. 484-485.) However, Harney's attorney did not object to Schultz's new argument or request further time to respond; instead, he argued quite positively that it makes no difference whether the parties were previously adversaries, as long as the *issue* was adjudicated by a court having jurisdiction to do so. As we shall discuss below, Harney is incorrect on this point.

the client in such an action cannot validly waive the statutory fee limitation and is entitled to recover any fees paid beyond the statutory limit. (*Fineberg* v. *Harney & Moore* (1989) 207 Cal.App.3d 1049, 1050 [255 Cal.Rptr. 299].)

In this case, Schultz not only agreed to pay a 25 percent contingency fee on the total recovery in the medical malpractice action, as did the plaintiff in *Fineberg*, *supra*, but the fee in this case was also expressly approved by the probate court, as required by Probate Code section 3601, in its Order Approving Compromise of minor's claim under Probate Code section 3600. Such an order is ordinarily entitled to preclusive effect *if all other conditions to such effect exist.* (*Rico* v. *Nasser Bros. Realty Co.* (1943) 58 Cal.App.2d 878, 881-882 [137 P.2d 861].)[5] ■ Relying on *Rico*, Harney contends the attack on his entitlement to the contested fees is barred by the doctrine of res judicata. We disagree.[6]

■ The doctrine of res judicata gives conclusive effect to a final judgment rendered upon the merits by a court having jurisdiction of the cause. (*Goddard* v. *Security Title Ins. & Guar.* (1939) 14 Cal.2d 47, 51 [92 P.2d 804].) "The rule is based upon the sound public policy of limiting litigation by preventing a party who has had one fair trial on an issue from again drawing it into controversy." (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 811 [122 P.2d 892].) "Restatement Second of Judgments views the doctrine as a bar or merger applicable to subsequent litigation between the

---

[5]Harney relies heavily on the decision in *Rico* v. *Nasser Bros. Realty Co., supra*, for the proposition that the court's approval of a minor's compromise is final and entitled to recognition under the doctrine of res judicata. However, that reliance is misplaced. In *Rico*, the minor sought to set aside the court-approved settlement, based upon a claimed unilateral mistake of fact as to the extent of his injuries. The defendant, who had paid the settlement and was clearly entitled to rely thereon, quite understandably objected and successfully argued the settlement's finality. (58 Cal.App.2d at pp. 879-880.) In *Rico*, the parties were clearly in an adversarial position and the minor's claim had been litigated and finally resolved by the court-approved compromise. (*Id.* at p. 880.) As we explain, that is not the case here.

[6]As we have observed, Harney correctly contends a final judgment or order may be res judicata, even if erroneous or contrary to a statute, if the court had jurisdiction over the subject matter and the parties. (*Moffat* v. *Moffat, supra*, 27 Cal.3d at p. 655; *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control, supra*, 55 Cal.2d at p. 733.) Harney also correctly argues that (1) the "public interest" exception to res judicata (see *Arcadia Unified School Dist.* v. *State Dept. of Education* (1992) 2 Cal.4th 251, 257 [5 Cal.Rptr.2d 545, 825 P.2d 438]; *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41]) applies only where the public interest requires relitigation of a particular question of law, which would otherwise be precluded (*City of Sacramento* v. *State of California* (1990) 50 Cal.3d 51, 64-65 [266 Cal.Rptr. 139, 785 P.2d 522]), and (2) the "injustice" exception (*Greenfield* v. *Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1]) has been severely criticized and only narrowly applied. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796 [126 Cal.Rptr. 225, 543 P.2d 593].) However, these arguments assume that a basis for the application of res judicata exists in the first place. As we point out, that assumption is not justified, as there was no adversarial litigation of the issue which Harney seeks to preclude.

same parties concerning the same controversy with very few exceptions. The Restatement's approach is based on the assumption that *there has been an opportunity in the first litigation for a fair and full hearing of the claim asserted.* Once that opportunity has been afforded, the Restatement Second asserts, fairness dictates that the controversy in question be put to rest." (Italics added.) (*Nakash* v. *Superior Court* (1987) 196 Cal.App.3d 59, 68 [241 Cal.Rptr. 578].)

 We emphasize, however, that the doctrine of res judicata applies only to the *same controversy* that was *directly adjudged* in a prior action *between the same parties.* (Code Civ. Proc., § 1908; *Nakash* v. *Superior Court, supra,* 196 Cal.App.3d at p. 67; see generally, 7 Witkin, Cal. Procedure, *supra,* Judgment, § 188, pp. 621-622.) This necessarily requires the litigation of an issue (or at least a fair opportunity to litigate) between parties *with adversarial interests.* The doctrine cannot be applied to immunize the outcome of a proceeding where the parties were not adversaries. (*Estate of Charters* (1956) 46 Cal.2d 227, 236 [293 P.2d 778]; see generally, 7 Witkin, Cal. Procedure, *supra,* Judgment, § 194, §§ 629-630.)

In *Estate of Charters, supra,* 46 Cal.2d 227, the probate court in 1946 issued an order approving the sale of an asset of a testamentary trust by the trustee, who was also the guardian of the estate of the minor beneficiary of the trust. (46 Cal.2d at p. 231.) In 1953, after reaching majority, the beneficiary challenged the propriety of the sale. The Supreme Court held the challenge was not precluded where the trustee had a dual relationship to the beneficiary, and moreover was her fiduciary and sole representative in the prior proceeding. Under these circumstances, there was no adversary trial or decision of the issue in the first proceeding; thus the probate court had jurisdiction to address it in the later one. (*Id.* at p. 236.)

Likewise, Harney and Schultz were not adversaries in the proceedings to approve the settlement of Christopher's claims in the medical malpractice action. To the contrary, Harney was Schultz's attorney and fiduciary. The probate court's approval of Harney's fees, obtained in apparent defiance of a contrary statute and through a possible breach by Harney of his fiduciary responsibility, cannot serve as the basis of a res judicata bar in this action. Schultz is entitled to seek recovery of that portion of those fees which exceeded the statutory restrictions. (Cf. *Estate of Charters, supra,* 46 Cal.2d at p. 236.)

3. *The Demurrer to Schultz's Complaint Should Have Been Sustained Only as to the Fraud Count and, Even as to That, Leave to Amend Should Have Been Granted.*

The demurrer to Schultz's complaint, which had purported to plead causes of action for attorney malpractice and fraud, should not have been sustained

as to the malpractice action, as a sufficient cause of action was pled. While the fraud cause of action was defective, leave to amend should have been granted.

### a. *The Malpractice Claim*

■ The elements of a cause of action for attorney malpractice are: (1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage. (*Jackson* v. *Johnson* (1992) 5 Cal.App.4th 1350, 1355 [7 Cal.Rptr.2d 482]; see generally, 1 Witkin, Cal. Procedure, *supra*, Attorneys, § 228, pp. 257-258.) ■ Schultz does not allege that Harney negligently performed legal services in the handling of the medical malpractice action itself, but rather, in effect, that he engaged in self-dealing to the detriment of his client by charging an excessive and unlawful fee for what Schultz does not deny was an otherwise satisfactory settlement, amounting in total to $1.6 million before costs and fees were deducted.

While not a model of pleading, such an allegation is sufficient to charge an act of professional negligence. An attorney's breach of the ethical duties of good faith and fidelity, which are owed by an attorney to his or her client, amounts to legal malpractice and is actionable. (*Lysick* v. *Walcom* (1968) 258 Cal.App.2d 136, 150-153 [65 Cal.Rptr. 406, 28 A.L.R.3d 368]; *Ivy* v. *Pacific Automobile Ins. Co.* (1958) 156 Cal.App.2d 652, 663 [320 P.2d 140]; see generally, *Developments in the Law: Conflicts of Interest in the Legal Profession* (1981) 94 Harv.L.Rev. 1244, 1486-1496.)

Although Harney could have believed in good faith before the issuance of *Fineberg* v. *Harney & Moore*, *supra*, 207 Cal.App.3d 1049, that the fee limits of the Medical Injury Compensation Reform Act (MICRA) were waivable, that may or may not have been a reasonable interpretation of the statute. The preamble to MICRA states that it was enacted for the urgent public purpose of relieving a major health care crisis in the state, which the Legislature attributed to "skyrocketing" malpractice premium costs. (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007.) Presumably, each of MICRA's provisions, including the fee limitations in Business and Professions Code section 6146, was intended to serve this public purpose, and a jury could reasonably conclude that Harney, as an experienced lawyer, should have known that, ". . . a law established for a public reason cannot be contravened by a private agreement." (Civ. Code, § 3513.)

Harney had a duty to know and properly apply the applicable law relating to fees for his services in connection with the presentation and approval of

the minor's compromise. An integral part of those services is the justification for and setting of the attorney fees earned in achieving the compromise. This included not only a knowledge of the statutory restrictions applicable to his fee claim, but also a thoroughly researched and sound basis for his express or implied representation to his client that those restrictions could legally be waived by the client. This, the complaint sufficiently alleges, Harney did not do. At trial, evidence as to the standard of care applicable when the charged misconduct took place, and whether Harney met that standard, may or may not support those allegations. However, we cannot say, as a matter of law, that a malpractice claim cannot successfully be asserted.

### b. *The Fraud Claim*

■ The elements of a cause of action for fraud are: (1) misrepresentation, including a misrepresentation of law, if such misrepresentation includes by implication a misrepresentation of fact; (2) knowledge that the representation is false; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. (Civ. Code, § 1709; *Lacher* v. *Superior Court* (1991) 230 Cal.App.3d 1038, 1046 Cal.Rptr. 640]; *Bobak* v. *Mackey* (1951) 107 Cal.App.2d 55, 57 [236 P.2d 626]; see generally, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 676, p. 778 and § 684, pp. 785-786.)
■ Schultz's complaint alleges that Harney falsely represented that a fee of 25 percent of the total recovery against the defendants would be legal. However, the complaint does not allege Harney concealed MICRA's provisions from Schultz; to the contrary, it alleges Harney represented to Schultz that the fee limitations could be waived by a client. The representation was false, but Schultz does not plead facts which show it was *knowingly* false.

Although it has since been judicially established that MICRA's attorney fee limitations cannot be waived (*Fineberg* v. *Harney & Moore, supra,* 207 Cal.App.3d at p. 1050), Harney's interpretation of the statute was one which could possibly have been made in good faith before our 1989 decision in that case. While it is also possible that Harney had no good faith belief and thus misrepresented his state of mind and understanding of the law, no such facts are alleged. Therefore, no proper cause of action for fraud has been pled.

### 4. *Schultz Must Be Given Leave to Amend His Complaint.*

■ It is axiomatic that a demurrer to a complaint should not be sustained without leave to amend if there is a reasonable possibility that the defects can be cured by amendment, or that, liberally construed, the pleading can state a cause of action. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216

Cal.Rptr. 718, 703 P.2d 58]; *Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1989) 222 Cal.App.3d 1371, 1387 [272 Cal.Rptr. 387].) When a trial court has sustained a demurrer without leave to amend, we must decide whether a cause of action is stated and, if not, whether there is a reasonable possibility of cure by amendment. If there is such a possibility, the trial court has abused its discretion and we must reverse. (*Blank* v. *Kirwan, supra,* 39 Cal.3d at p. 318.) The plaintiff has the burden of showing there is a reasonable possibility of curing defects in his complaint by amendment. (*Ibid.*) This showing may be made for the first time on appeal. (*Careau & Co.* v. *Security Pacific Business Credit, Inc., supra,* 222 Cal.App.3d at pp. 1387-1388.)

We have already set forth our views with respect to the trial court's error in ruling on Harney's objections to the malpractice and fraud claims. In addition, Schultz's attorney asserted at the time of oral argument that he can amend his complaint to allege an additional cause of action for money had and received. Based upon the record before us, it appears that such cause of action can be alleged.

A cause of action is stated for money had and received if the defendant is indebted to the plaintiff in a certain sum "for money had and received by the defendant for the use of the plaintiff." (*Pike* v. *Zadig* (1915) 171 Cal. 273, 275-276 [152 P. 923]; *Smith* v. *Randall* (1942) 51 Cal.App.2d 195, 196-197 [124 P.2d 334]; see generally, 4 Witkin, Cal. Procedure, *supra,* Pleading, § 512, pp. 546-547.) The cause of action is available where, as here, the plaintiff has paid money to the defendant pursuant to a contract which is void for illegality. (*Smith* v. *Randall, supra,* 51 Cal.App.2d at pp. 197-198.)

As we have concluded above, Schultz's claim against Harney for disgorgement of the wrongful fee was not barred under the doctrine of res judicata. Of course, the statute of limitations is tolled during Christopher's minority, at least as to causes of action in which Christopher is the real party in interest. (Code Civ. Proc., § 352, subd. (a)(1); *Epstein* v. *Frank* (1981) 125 Cal.App.3d 111, 122 [177 Cal.Rptr. 831]; *Van Buskirk* v. *Todd* (1969) 269 Cal.App.2d 680, 689 [75 Cal.Rptr. 280].)

Because the contingent fee agreement between Harney and Schultz was void for illegality (to the extent it violated the provisions of Business and Professions Code section 6146), the facts alleged in Schultz's complaint effectively state a cause of action for money had and received. (*Smith* v. *Randall, supra,* 51 Cal.App.2d at pp. 197-198.) Schultz must therefore be given leave to amend his complaint to allege that cause of action expressly.

In addition, he should have the opportunity to cure the defects in his fraud cause of action, if sufficient additional facts can truthfully be alleged.

## DISPOSITION

The order of dismissal is reversed. The matter is remanded with directions to grant Schultz leave to amend his complaint and to conduct further proceedings consistent with the views expressed herein. Costs on appeal are awarded to Schultz.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied September 29, 1994, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied December 21, 1994. Mosk, J., was of the opinion that the petition should be granted.