[No. B015313. Second Dist., Div. One. Nov. 6, 1986.]

LEILA HATHAWAY et al., Plaintiffs and Appellants, v. BALDWIN PARK COMMUNITY HOSPITAL et al., Defendants and Respondents.

**COUNSEL**

Ian Herzog for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

**OPINION**

**DEVICH, J.**—Plaintiffs, Leila and Frank Hathaway, appeal from the trial court's order denying their petition for extraordinary attorneys' fees. We affirm.

### PROCEDURAL HISTORY

According to the declaration of the Hathaways' attorney, Ian Herzog, attached to the petition for extraordinary attorneys' fees, the Hathaways hired Mitch Rosen to prosecute a medical malpractice action against various defendants. Rosen hired Lawrence Chusid, who is both an attorney and a doctor, to serve as a consultant on the case. Thereafter, Herzog was retained to conduct the trial.[1]

The trial resulted in general verdicts in favor of Leila Hathaway and against all but one of the defendants in the amount of $889,500 and in favor

[1]The record on appeal does not indicate whether Herzog was associated in the case as cocounsel to Rosen or was substituted in as sole counsel. However, Herzog's declaration does indicate that a participation fee will be paid to the other attorneys.

of Frank Hathaway and against all but two of the defendants in the amount of $50,000. In order to eliminate inconsistencies that existed between the jury's general verdicts and special findings, the Hathaways dismissed two of the defendants.

The remaining two defendants appealed from the judgment entered against them contending that the trial court erred when it granted the Hathaways' motion to dismiss the other two defendants. This court held that this issue had been waived since these two defendants did not object to the procedure at the trial level. (*Hathaway* v. *Spiro* (1985) 164 Cal.App.3d 359, 366-367 [210 Cal.Rptr. 421].)

On March 28, 1985, the Hathaways petitioned the trial court to permit them to compensate their attorney at the rate of one-third of the amount they recovered in the case rather than the much lower amount prescribed by Business and Professions Code section 6146.[2] Alternatively, the Hathaways sought permission to make a voluntary payment to Herzog. The trial court denied the Hathaways' petition on June 12, 1985.[3]

## ISSUES

On appeal, the Hathaways contend that section 6146 does not prohibit a trial court, in extraordinary cases, from awarding attorneys' fees in excess of the stated fee schedule. Alternatively, the Hathaways contend that if a trial court does not have the authority to award extraordinary attorneys' fees, section 6146 is unconstitutional as applied to them.

## HISTORY OF MICRA

On May 16, 1975, Governor Edmund G. Brown, Jr., convened the Legislature in extraordinary session to consider legislation aimed at remedying

---

[2]Business and Professions Code section 6146 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). (Stats. 1975, Second Ex. Sess. 1975-1976, chs. 1, 2, pp. 3949-4007.) This section provides, in pertinent part: "(a) An attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with an action for injury or damage against a health care provider based upon such person's alleged professional negligence in excess of the following limits: [¶] (1) Forty percent of the first fifty thousand dollars ($50,000) recovered. [¶] (2) Thirty-three and one-third percent of the next fifty thousand dollars ($50,000) recovered. [¶] (3) Twenty-five percent of the next one hundred thousand dollars ($100,000) recovered. [¶] (4) Ten percent of any amount on which the recovery exceeds two hundred thousand dollars ($200,000). [¶] . . . [¶] (c) For purposes of this section: [¶] (1) 'Recovered' means the net sum recovered after deducting any disbursements or costs incurred in connection with prosecution or settlement of the claim. Costs of medical care incurred by the plaintiff and the attorney's office-overhead costs or charges are not deductible disbursements or costs for such purpose."
Unless otherwise stated, all statutory references are to the Business and Professions Code.

[3]The trial court declined to rule on the propriety of a monetary gift from the Hathaways to Herzog. This issue is not argued on appeal.

a perceived crisis caused by rapid increases in medical malpractice insurance premiums.

The Governor's proclamation stated, in pertinent part: "The cost of medical malpractice insurance has risen to levels which many physicians and surgeons find intolerable. The inability of doctors to obtain such insurance at reasonable rates is endangering the health of the people of this State, and threatens the closing of many hospitals. The longer term consequences of such closings could seriously limit the health care provided to hundreds of thousands of our citizens. [¶] In my judgment, no lasting solution is possible without sacrifice and fundamental reform. It is critical that the Legislature enact laws which will change the relationship between the people and the medical profession, the legal profession and the insurance industry, and thereby reduce the costs which underlie these high insurance premiums. [¶] Therefore, in convening this extraordinary session, I ask the Legislature to consider: [¶] . . . [¶] 8. Establishment of reasonable limits on the amount of contingency fees charged by attorneys. [¶] 9. Elimination of double payments ('collateral sources'); institution of periodic payments and reversionary trusts; limitation of compensation for pain and suffering while insuring fully adequate compensation for all medical costs and loss of earnings; and setting a reasonable statute of limitations for the filing of malpractice claims. [¶] . . . [¶] Therefore, by virtue of Article IV, Section 3 of the Constitution, I hereby assemble the Legislature of the State of California in extraordinary session at Sacramento at 1:00 p.m. Monday, May 19, 1975, to consider and act on this legislation." (Governor's Proclamation to Leg. (May 16, 1975) Stats. 1975 (Second Ex. Sess. 1975-1976) pp. 3947-3948.)

The Legislature responded by enacting MICRA, a sweeping statute that enacted, amended, or repealed several sections of the Business and Professions Code, the Civil Code, the Code of Civil Procedure, and the Insurance Code. The Governor approved the bill on September 23, 1975. The preamble to MICRA states, in part: "The Legislature finds and declares that there is a major health care crisis in the State of California attributable to skyrocketing malpractice premium costs and resulting in a potential breakdown of the health delivery system, severe hardships for the medically indigent, a denial of access for the economically marginal, and depletion of physicians such as to substantially worsen the quality of health care available to citizens of this state. The Legislature, acting within the scope of its police powers, finds the statutory remedy herein provided is intended to provide an adequate and reasonable remedy within the limits of what the foregoing public health and safety considerations permit now and into the foreseeable future." (Stats. 1975, Second Ex. Sess. 1975-1976, ch. 2, § 12.5, p. 4007.)

In the years that have followed its enactment, various provisions of MICRA have withstood constitutional challenges. In *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359, 364 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233], the court held that MICRA's provision calling for periodic payment of "future damages" that are $50,000 or greater (Code Civ. Proc., § 667.7) did not violate either the state or federal due process or equal protection clauses since it was rationally related to a legitimate state interest (i.e., the reduction of medical malpractice insurance costs).

Similarly, in *Barme* v. *Wood* (1984) 37 Cal.3d 174, 180 [207 Cal.Rptr. 816, 689 P.2d 446], the court held that MICRA's provision which prohibits "collateral sources" from obtaining reimbursement from medical malpractice defendants or their insurers (Civ. Code, § 3333.1, subd. (b)) did not violate the due process or equal protection clauses since it was rationally related to reducing the cost of medical malpractice insurance.

In *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 931-932 [211 Cal.Rptr. 77, 795 P.2d 164], the court held that MICRA's provision limiting the amount of fees an attorney may collect when representing a plaintiff in a medical malpractice action on a contingency basis (§ 6146) was rationally related to the legislation's legitimate objective and therefore did not run afoul of the due process or equal protection clauses.

In *Fein* v. *Permanente Medical Group* (1985) 38 Cal.3d 137, 158-159 [211 Cal.Rptr. 368, 695 P.2d 665], the court rejected due process and equal protection challenges to the sections of MICRA which limit damages for noneconomic losses to $250,000 (Civ. Code, § 3333.2, subd. (b)) and permit a defendant to introduce evidence of benefits a plaintiff has received from a collateral source. (Civ. Code, § 3333.1, subd. (a).) The court concluded that these provisions were rationally related to MICRA's legitimate objective.

DISCUSSION

A. Does section 6146 prohibit a trial court from awarding attorneys' fees in excess of the rates provided therein?

The Hathaways argue that section 6146 should not be interpreted as prohibiting a trial court from awarding extraordinary attorneys' fees in extraordinary cases. They cite to *Roa* v. *Lodi Medical Group, Inc., supra,* 37 Cal.3d at page 926 wherein the court stated: "Statutory limits on attorney fees are not at all uncommon, either in California or throughout the country generally. In this state, attorney fees have long been legislatively regulated both in workers' compensation proceedings (Lab. Code, § 4906) and in probate matters. (Prob. Code, §§ 910, 901.)" The Hathaways seem to be

arguing that section 6146 should have a provision for extraordinary attorneys' fees similar to the provisions found in Probate Code section 910 and Labor Code section 4903. However, in both of these statutes, the Legislature specifically empowered the trial court with discretion to award attorneys' fees that are "reasonable." The same cannot be said about MICRA.

MICRA, as initially introduced in the Assembly on May 19, 1975, provided, in pertinent part: "21210. (a) The [California Arbitration Commission on Medical Injury Compensation] and the courts of this state shall determine reasonable fees for the compensation of legal services performed by attorneys at law in connection with the representation of persons seeking compensation for personal medical injury tort claims. Except as provided in subdivision (b), no fee for such legal services shall exceed the following: [¶] [Fee schedule.] [¶] . . . [¶] (b) Where a plaintiff is awarded money damages in a personal tort action and such plaintiff's attorney provided or is providing legal services pursuant to a contingency fee agreement, the judge, in open court, or the commission shall review the provisions of such agreement with all parties, including the plaintiff individually, and all attorneys seeking benefits under the agreement; . . . The amount of any attorney's fee shall be determined according to the contingency fee agreement unless the court or commission substitutes a different amount upon a specific finding that the amount agreed upon would be grossly inadequate or grossly excessive in view of the professional legal services actually rendered on behalf of the plaintiff." (Assem. Bill No. 1 (1975-1976 Second Ex. Sess.) Div. 17, ch. 6, § 21210.)

Section 21210 was deleted when Assembly Bill No. 1 was amended in the Assembly on June 6, 1975. Section 21210 was replaced by the similar provisions of section 24.2 which added article 8.5 to chapter 4 of division 3 of the Business and Professions Code. Article 8.5 provided, in pertinent part: "6146. (a) Except as provided in subdivision (b), an attorney shall not contract for or collect a contingency fee for representing any person seeking damages in connection with a medical injury tort claim in excess of the following limits: [¶] [Fee schedule.] [¶] . . . [¶] (b) Where a plaintiff is awarded money damages in a medical injury tort action and such plaintiff's attorney provided or is providing legal services pursuant to a contingency fee agreement, the judge shall review in open court the provisions of such agreement . . . . The amount of any attorney's fee shall be determined according to the contingency fee agreement unless the court substitutes a different amount upon a specific finding that the amount agreed upon would be substantially inadequate or substantially excessive in view of the professional legal services actually rendered on behalf of the plaintiff."

Section 24.2 of Assembly Bill No. 1 was amended in the Assembly on June 11, 1975, by the addition of several definitions of the terms used in that section.

Section 24.2 of Assembly Bill No. 1 was amended in the Assembly on June 12, 1975, by replacing former section 6146, subdivision (b), with the following: "(b) A contract for attorney fees for representation of a plaintiff in any action specified in subdivision (a), and which provides for compensation under a contingency fee arrangement, is void unless such contract is approved by the court in which the action is pending. If the court disapproves such a contract and a judgment is recovered, the plaintiff's attorney fees shall be fixed by the court rendering the judgment. . . ." This portion of subdivision (b) was deleted by an amendment in the Senate on June 27, 1975.

It is abundantly clear from the foregoing that the Legislature considered vesting the trial court with the authority to set reasonable attorneys' fees and specifically rejected this proposal.

In their brief, the Hathaways assert: "If *B&P Code* § 6146 is interpreted as a straightjacket, prohibiting trial judges from awarding extraordinary fees in extraordinary cases, it will not only discourage attorneys from undertaking difficult liability cases, it will unjustly penalize plaintiffs, forcing them to settle their cases at a discounted amount (even after a verdict has been reached)." However, the Hathaways are addressing the wrong forum. Decisions regarding the wisdom in enacting a statute or the long-term effects of a statute are within the province of the Legislature, not the Judiciary. (*American Bank & Trust Co.* v. *Community Hospital, supra,* 36 Cal.3d at p. 369.) The long-term effects of MICRA were undoubtedly considered by the Legislature prior to its approval of the bill. We therefore conclude that a trial court does not have the power to award extraordinary attorneys' fees under section 6146. Any changes in the attorneys' fee provision of MICRA will have to come about through additional legislation.

B. Is section 6146 unconstitutional as applied to the Hathaways?

In their brief, the Hathaways present the bald assertion that section 6146, if interpreted to prevent a trial court from awarding extraordinary attorneys' fees, becomes unconstitutional as applied to this case and incorporate by reference their petition to the trial court. In his declaration in support of the petition for extraordinary attorneys' fees, Herzog states that a participation fee will have to be paid to the other attorneys on the case but does not indicate what percentage of Herzog's fees are going to the other attorneys.

Herzog claims that his office will actually take a loss on this case but does not state any facts to support this assertion.

An exhibit attached to the petition provides an accounting of the costs advanced by Herzog's office for this case but fails to indicate which of these costs, if any, were not recovered from the Hathaways. Finally, neither the Hathaways' brief nor their petition to the trial court indicates which constitutional provisions are violated by section 6146's application to them. We therefore conclude that the Hathaways have failed to properly assert the alleged constitutional infirmity. (*Coates Capitol Corp.* v. *Superior Court* (1967) 251 Cal.App.2d 125, 130 [59 Cal.Rptr. 231]; *Atlas Terminals, Inc.* v. *Sokol* (1962) 203 Cal.App.2d 191, 209 [21 Cal.Rptr. 293].)

## Disposition

The order denying the Hathaways' petition for extraordinary attorneys' fees is affirmed.

Hanson (Thaxton), Acting P. J., and Woods, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.