40 Cal.App.4th 1433 (1995)
48 Cal. Rptr.2d 301
MAI CHI NGUYEN, a Minor, etc., Plaintiff and Respondent,
v.
LOS ANGELES COUNTY HARBOR/UCLA MEDICAL CENTER, Defendant and Respondent; LAW OFFICES OF DAVID M. HARNEY, Movant and Appellant.
Docket No. B084941.
Court of Appeals of California, Second District, Division Seven.
December 11, 1995.
*1439 COUNSEL
David M. Harney, Thomas Kallay, Robert H. Pourvali, Esner, Zakheim & Higa, Esner, Marylander, Zakheim & Higa, Rosalyn S. Zakheim and Stuart B. Esner for Movant and Appellant.
Riordan & McKinzie, Jeffrey L. Glassman and H. Jay Kallman for Plaintiff and Respondent.
Bonne, Bridges, Mueller, O'Keefe & Nichols, George E. Peterson, Greines, Martin, Stein & Rinchland, Kent L. Richland and Barbara S. Perry for Defendant and Respondent.
OPINION
JOHNSON, J.
The parties call on us to decide two separate but related issues: (1) May a final judgment providing for periodic payments of future damages be amended at the request of the plaintiff to require a cash advance against future damages in the amount necessary to pay her attorney fees? (2) In determining the maximum attorney fees allowable under MICRA,[1] how should the trial court calculate the "total value" of periodic payments of future damages? We have concluded the trial court cannot amend the final judgment in this case to alter the schedule of periodic payments of damages *1440 in order that plaintiff's attorney can recover his fees immediately. We have further concluded that for purposes of calculating the maximum attorney fees allowable under MICRA the "total value" of periodic payments is the present value of the product of the periodic payments multiplied by the number of years remaining in the plaintiff's life expectancy.

FACTS AND PROCEEDINGS BELOW
At the age of eight months, Mai Chi Nguyen underwent a hip arthrogram at the Los Angeles County Harbor/UCLA Medical Center. Professional negligence in performing this procedure caused Ms. Nguyen to suffer full respiratory arrest resulting in a transtentorial herniation of her brain. At the time of trial, five years later, she was unable to speak or see. The majority of time she lay in a supine position, her legs at right angles at the hips. She had to be fed through gastrostomy. It is undisputed Ms. Nguyen will never be able to care for herself but will forever be dependent on others for the sum total of her daily needs.
After a lengthy trial, in which the County of Los Angeles (hereafter County) was the only defendant, a jury awarded Ms. Nguyen $1 million for past and present pain and suffering and $165,943.75 for past medical costs.[2] In addition, the jury awarded Ms. Nguyen compensation for future damages on an annual basis as follows: $7,000 for medical expenses, $9,500 for hospital expenses, $32,500 for attendant care, and $30,000 for lost earnings commencing in the year 2008. The jury also made findings on future rates of inflation by which these sums are to be adjusted.
Prior to trial, plaintiff's counsel, the Law Offices of David M. Harney, made a request under Code of Civil Procedure section 667.7 that damages for future economic losses, e.g., medical expenses and costs of attendant care, be paid through periodic payments, leaving the award of general damages to be paid in a lump sum.[3] The motion made no mention of how attorney fees were to be paid from the judgment.
*1441 Pursuant to the Harney firm's request, the judgment awarded damages for past pain and suffering and economic losses to Ms. Nguyen in a lump sum and ordered future economic damages to be paid in periodic payments. Plaintiff's and defendant's experts agreed on the annual total sums of these periodic payments and they were set out in a schedule made part of the judgment. The judgment made no mention of how the Harney firm's fees would be calculated or paid.
The judgment also ordered the County to post security to assure full payment of future damages. After the judgment was entered, the County moved for an order approving an annuity it planned to purchase to satisfy its obligation to make periodic payments of future damages as ordered by the judgment. The trial court granted the motion and issued an order approving the annuity. The County purchased the annuity for approximately $400,000.
Ms. Nguyen moved for a new trial on the ground, among others, the court had erred by not calculating and awarding attorney fees under Business and Professions Code section 6146.[4] The trial court denied the motion for new trial but reserved jurisdiction over the attorney fees issue and set a hearing to receive further evidence and oral arguments on the issue of Ms. Nguyen's life expectancy for the purpose of calculating attorney fees. We will refer to this hearing as the first attorney fees hearing.
At the first attorney fees hearing, the court took evidence from experts for Ms. Nguyen and the County as to her life expectancy. The court also heard argument as to how the attorney fees allowable under section 6146 should be calculated and paid. The Harney firm argued its fees should be paid in a lump sum calculated on the basis of the damages already paid to plaintiff plus the total future payments, as determined by plaintiff's life expectancy, reduced to present value. Recognizing the damages for pain and suffering and accrued medical expenses did not create a big enough "pot" from which to draw its attorney fees and still leave Ms. Nguyen with immediate cash to meet her needs, the Harney firm proposed the judgment be amended to require the County to advance a sufficient portion of the periodic payments to cover attorney fees and credit this amount against future periodic payments by reducing those payments by an agreed upon percentage until the amount advanced was recouped.
The trial court took the matter under submission and later issued a minute order rejecting the Harney firm's approach to the calculation and payment of attorney fees attributable to future economic damages. The court found a *1442 determination of Ms. Nguyen's life expectancy to be "impractical and unnecessary." Instead, the court ruled "attorney's fees for plaintiff's counsel should be the maximum [section 6146] allows with a periodizing of future payments to be based upon the installments payable under the judgment." The Harney firm was directed to prepare an order fixing and allowing fees "specify[ing] what portion of the fees will be payable out of the cash receivable by the plaintiff as of the present and the rate of payments out of future installments." In other words, the trial court ruled attorney fees would be payable to the Harney firm in part out of the lump sum award for pain and suffering and accrued medical costs and in part out of each periodic payment as the plaintiff received it. The percentage limitations of section 6146 would be calculated on the basis of the cumulative total of all payments made to plaintiff under the judgment.[5]
Following the first attorney fees hearing, but before the trial court issued the minute order described in the preceding paragraph, Ms. Nguyen filed an appeal from certain portions of the judgment including the trial court's failure to determine the amount of attorney fees allowable under section 6146. The minute order from the first attorney fees hearing was included in the record on appeal. The Harney firm did not submit an attorney fees order as directed by the trial court, believing if it did so it would waive the attorney fees issue on the pending appeal.
Division Five of this court ruled on Ms. Nguyen's appeal. (Nguyen v. Los Angeles County Harbor/UCLA Medical Center (1992) 8 Cal. App.4th 729 [10 Cal. Rptr.2d 709].) The court held, in an unpublished portion of the opinion, the minute order regarding attorney fees was not an appealable order. The court further held the trial judge did not err in failing to specify the attorney fee award in the judgment. "[N]either Business and Professions Code section 6146 nor Code of Civil Procedure section 667.7 requires the attorney fee award to appear in the judgment. More critically, issues concerning attorney fees may be resolved after judgment. The judgment may be amended to reflect the correct amount of attorney fees. [Citations.] ... Accordingly, on remand, the minor plaintiff may submit an order to a superior court law and motion judge and, if she is unsatisfied, appeal under those circumstances. [Citation.]"
Upon remand of the matter to the trial court, Ms. Nguyen, through her guardians, filed a petition for instructions regarding payment of attorney fees *1443 and costs. The Harney firm filed a petition for authorization of payment of attorney fees. (We will refer to this proceeding as the second attorney fees hearing.) In the second attorney fees hearing, the Harney firm reiterated its position the fees allowable under section 6146 should be calculated on the basis of the damages already paid to plaintiff plus the total future payments, as determined by plaintiff's life expectancy, reduced to present value and that the fees be paid in a lump sum. The firm again proposed that to fund this lump sum payment of attorney fees, the fees be advanced by the County and credited against future periodic payments to the plaintiff in an amount determined by the court.
The guardians did not oppose the Harney firm's proposed calculation of attorney fees nor the proposal the County be ordered to advance periodic payments in the amount necessary to cover attorney fees with credit against future periodic payments.
The County took the position attorney fees should be based on the amount awarded for pain and suffering and past medical expenses plus the cost of the annuity the County purchased to fund the periodic payments. The County strenuously opposed the proposal it advance periodic payments to the plaintiff and take a credit for that advance against future payments in order to allow plaintiff to pay her attorney fees in a lump sum.
At the second attorney fees hearing, the court stated it did not believe it had the power to modify the judgment to order the County to advance periodic payments to the plaintiff as requested by the Harney firm and even if it had such power it would not do so in light of the fact the County had purchased an annuity for the purpose of making periodic payments as they came due and such payments had been made on schedule for the past five years. Consequently, the trial court issued an order denying the Harney firm's request for a lump sum payment of attorney fees and directing attorney fees to be paid to the Harney firm "from each quarterly installment of the judgment entered in the underlying case as each installment is paid under the terms of the ... judgment." The court reserved ruling on the manner in which attorney fees should be calculated pending resolution of the Harney firm's appeal from the foregoing order as to the method of payment.
This appeal followed.

DISCUSSION

I. The Trial Court Lacked Jurisdiction to Amend the Periodic Payments Provision of a Final Judgment.

(1a) The Harney firm's present dilemma stems from its pretrial request under Code of Civil Procedure section 667.7 that all of the plaintiff's future *1444 damages be paid in the form of periodic payments. Based on the verdict, the trial court granted this request and provided in the judgment for a cash payment of $415,943.75, representing damages for pain and suffering and accrued medical expenses, and periodic payments of all future damages representing the cost of future medical and attendant care expenses and lost earnings.
At some point after the judgment was entered, the Harney firm apparently realized for the first time its attorney fees might exceed the amount available to the plaintiff from the cash payment under the judgment or that recovering its attorney fees in full from the cash payment would not be in the best interests of the client. In order to address this problem the Harney firm attempted to amend the judgment through a motion for new trial which included a request the court determine attorney fees in accordance with section 6146, that it modify the judgment to require the County to pay plaintiff's attorney fees directly to the Harney firm and that this payment be offset against future periodic payments to the plaintiff under the judgment. The trial court denied the motion for new trial on all grounds including the request to calculate attorney fees and amend the judgment. As previously noted, Division Five of this court upheld the trial court's ruling.
Upon remand, the Harney firm renewed its request the trial court determine the amount of attorney fees to be awarded in this case, including a determination of the total value of the periodic payments, and that it order the County to pay the attorney fees attributable to future periodic payments in a lump sum with a credit for that payment to be applied to future periodic payments to Ms. Nguyen. Again, the trial court refused to amend the judgment to provide a way for the Harney firm to recover the full amount of its attorney fees now instead of receiving a small percentage out of each future periodic payment to Ms. Nguyen.
We appreciate the dilemma faced by the Harney firm in attempting to collect its attorney fees and at the same time meet its ethical responsibilities to its client. (2) When a damage award is split between a current cash payment and periodic payments of future damages, should attorney fees be satisfied completely out of the cash payment, completely out of the periodic payments, or partially out of each?
As a general rule, the preferable approach is to satisfy the attorney fees immediately out of the cash payment. This is not only the general practice in the community, it makes the most sense as a matter of legislative intent and public policy. The plaintiff's attorney has done what he or she was retained *1445 to do once the judgment has been entered. The case is over; the fee is earned. If the fee is to be paid over time out of periodic payments, the attorney may never receive it if the plaintiff should die before the fee is recovered. Under Code of Civil Procedure section 667.7 periodic payments cease upon the death of the plaintiff (with an exception not applicable here) and the judgment in this case so provides. Thus, if the plaintiff's expected life span is cut short, the tortfeasor whose negligence was responsible for the plaintiff's injury receives a windfall at the expense of the attorney whose labor produced the judgment. Indeed, as between the plaintiff, the plaintiff's attorney and the tortfeasor, the tortfeasor stands to gain the most from the deferral of the attorney fee.[6]
(3) Clearly, this was not the intent of the Legislature when it enacted Code of Civil Procedure section 667.7. The Legislature stated its intent in subdivision (f) of the statute "that the courts will utilize [periodic payments] to provide compensation sufficient to meet the needs of an injured plaintiff and those persons who are dependent on the plaintiff for whatever period is necessary while eliminating the potential windfall from a lump sum recovery which was intended to provide for the care of an injured plaintiff over an extended period of time who then dies shortly after the judgment is paid, leaving the balance of the judgment award to persons and purposes for which it was not intended." As our Supreme Court explained in upholding the constitutionality of section 667.7, a major purpose of the statute was "eliminating the so-called `windfall' obtained by a plaintiff's heirs when they inherit a portion of a lump sum judgment that was intended to compensate the injured person for losses he in fact never sustained." (American Bank & Trust Co. v. Community Hospital (1984) 36 Cal.3d 359, 369 [204 Cal. Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233].) Unlike the plaintiff's heirs who might receive an unearned portion of the lump sum judgment, the plaintiff's attorney has earned his or her portion of the judgment through the application of the skill and knowledge which produced the judgment. Having borne the risk of receiving no fee at all if the suit was unsuccessful, the attorney should not be required to bear a new risk the plaintiff will not live to collect the full amount of the jury's award.
(4) As the Harney firm readily acknowledges, there may be situations in which it would be contrary to the best interests of the client to recover the *1446 full amount of attorney fees out of the cash payment received by the client.[7] Such a situation could arise where the plaintiff has fallen deeply in debt due to substantial medical bills and the inability to work and payment of attorney fees would eat up virtually all of the up-front cash payment under the judgment.
In the kind of situation just described, it would appear at least a portion of the attorney fees would have to be deferred and paid out of the periodic payments. There are, however, approaches which would allow the full amount of attorney fees to be paid immediately.
One such approach is to reduce all or a part of the periodic payments by an amount sufficient to cover the balance of attorney fees and add that sum to the up-front cash payment under the judgment. The following example, although oversimplified, demonstrates this approach. Assume the plaintiff was awarded a cash payment plus periodic payments of $50,000 a year for 10 years. The attorney fees totaled $100,000 but only $50,000 could reasonably be recovered out of the cash payment due to the plaintiff's medical bills and other accumulated expenses. The periodic payments could be reduced to $45,000 a year and the $50,000 difference paid to the plaintiff in cash from which the plaintiff could pay her attorney fees.
This same approach could be used if, as is often the case, the defendant purchased an annuity to cover the periodic payments. Of the sum the defendant would have paid to purchase a 10-year annuity paying $50,000 a year, the defendant would pay $50,000 to the plaintiff up front and purchase a reduced annuity with the remainder of the sum. (See Henderson, Designing a Responsible Periodic-Payment System for Tort Awards: Arizona Enacts a Prototype (1990) 32 Ariz. L.Rev. 21, 55-56 [hereafter Henderson].) Such an approach is permissible under Code of Civil Procedure section 667.7, subdivision (a), which gives the trial court authority to order future damages to be paid "in whole or in part by periodic payments."[8]
(5) The Harney firm has suggested an approach similar to the one described above. Under this proposal, the County would pay the plaintiff an *1447 advance against future periodic payments in an amount sufficient to meet the Harney firm's fees in full. The County would then recover this advance by reducing the future periodic payments to the plaintiff by a percentage to be determined by the court until the amount of the advance had been recouped.
There are two obvious advantages to the "pay-and-recoup" approach suggested by the Harney firm. The first is that the firm receives its full fee immediately rather than having to wait years for its payment. The second is that the tortfeasor, rather than the plaintiff's attorney, bears the risk of the plaintiff's death, at least as to the attorney fees for the legal work which held the tortfeasor accountable. For the reasons we have explained, we believe this is an appropriate allocation of risk.[9]
(1b) Unfortunately, the Harney firm failed to appreciate and deal with the dilemma it faced in collecting its fees when it had the opportunity to do so. By requesting the judgment provide that all future damages be paid by means of periodic payments, it is now locked into that judgment. The judgment is final and we see no basis on which it could be amended to alter the provision regarding periodic payments. (Cf. Craven v. Crout (1985) 163 Cal. App.3d 779, 783 [209 Cal. Rptr. 649] [trial court lacked jurisdiction to order periodic payments after judgment awarding lump-sum payment became final].) The time has long passed for a motion under Code of Civil Procedure section 473, and the proposed modification cannot be justified as the correction of a clerical error in the judgment. Furthermore, the modification of the judgment proposed by the Harney firm is in direct conflict with the provision of Code of Civil Procedure section 667.7, subdivision (f) which states: "It is also the intent of the Legislature that all elements of the periodic payment program be specified with certainty in the judgment ordering such payments and that the judgment not be subject to modification at some future time which might alter the specifications of the original judgment."[10]
The Harney firm argues the trial court was given the authority to modify the periodic payments portion of the judgment by the decision in the first *1448 appeal in this matter. It relies on the court's statement "[N]either Business and Professions Code section 6146 nor Code of Civil Procedure section 667.7 requires the attorney fee award to appear in the judgment. More critically, issues concerning attorney fees may be resolved after judgment. The judgment may be amended to reflect the correct amount of attorney fees. [Citations.] ... Accordingly, on remand, the minor plaintiff may submit an order to a superior court law and motion judge and, if she is unsatisfied, appeal under those circumstances. [Citation.]"
While it is true the opinion makes the general statement "issues concerning attorney fees may be resolved after judgment" this statement is followed by the more specific statement "[t]he judgment may be amended to reflect the correct amount of attorney fees." (Italics added.) All of the cases cited in the quoted portion of the opinion stand for the proposition the trial court has jurisdiction to determine the amount of attorney fees after judgment. (See, e.g., Raisola v. Flower Street Ltd. (1988) 205 Cal. App.3d 1004, 1007 [252 Cal. Rptr. 726].) What the Harney firm seeks is not just a determination of the amount of its attorney fees, which the trial court clearly has jurisdiction to decide, but an amendment to the judgment itself to alter the provisions regarding periodic payments. Nothing in the previous appellate opinion authorizes the trial court to amend the final judgment to alter the periodic payments.
(6) This case illustrates the pitfalls even experienced attorneys may encounter in collecting fees in a MICRA case. As a guide for the future, we suggest attorneys who expect they may be faced with the dilemma that faced the Harney firm should request the trial court to stay entry of judgment until the amount and method of payment of attorney fees have been determined. (Code Civ. Proc., § 664; and see Craven v. Crout, supra, 163 Cal. App.3d at p. 784.) The court can then enter judgment dividing future damages between lump-sum and periodic payments as appropriate and the plaintiff, if dissatisfied with the judgment, will have a clear path to appellate review.

II. For Purposes of Determining the Maximum Attorney Fees Allowable Under MICRA, the "Total Value" of Periodic Payments of Future Damages Is the Present Value of the Product of the Periodic Payments Multiplied by the Number of Years Remaining in the Plaintiff's Projected Life Expectancy.

(7a) The amount of attorney fees to be awarded the Harney firm has been debated at length in the trial court but never determined. The principal issue is how the periodic payments of future damages to Ms. Nguyen should *1449 be valued for purposes of determining the maximum attorney fees allowable under section 6146. Although the trial court in this case is not required to allow the maximum, it cannot exceed it. (Hathaway v. Baldwin Park Community Hospital (1986) 186 Cal. App.3d 1247, 1253 [231 Cal. Rptr. 334].)
In the second hearing on attorney fees the trial court reserved the issue of the amount of attorney fees until we decided if the fees would be paid in a lump sum or paid out of each periodic payment as it comes due. Having upheld the trial court's order that attorney fees be paid out of each periodic payment, we could simply remand the matter to the trial court to determine the amount of fees to be awarded. However, we believe it is appropriate to provide guidance to the trial court on the issue of valuing periodic payments of future damages because this issue will arise again on remand, the issue has been fully briefed by the parties, and there is conflicting case law on the issue.
(8) As we have previously noted, section 6146, subdivision (a) limits the amount an attorney may "contract for or collect [as] a contingency fee for representing any person seeking damages ... against a health care provider based on such person's alleged professional negligence." This limitation applies "regardless of whether the recovery is by settlement, arbitration or judgment, or whether the person for whom the recovery is made is a responsible adult, an infant or a person of unsound mind." (Ibid.) Subdivision (b) of section 6146 provides: "If periodic payments are awarded to the plaintiff pursuant to Section 667.7 of the Code of Civil Procedure, the court shall place a total value on these payments based upon the projected life expectancy of the plaintiff and include this amount in computing the total award from which attorney's fees are calculated under this section." The Legislature did not specify the method by which the court should determine the "total value" of periodic payments except to say the determination must be based upon the life expectancy of the plaintiff.[11]
*1450 There are two possible approaches to determining the total value of the periodic payments based on the plaintiff's projected life expectancy: the present value approach and the cost approach.
(9) Under the present value approach, the court determines the total sum of future payments based on the plaintiff's projected life expectancy and then applies a discount rate to reduce that sum to its value in today's dollars. (Niles v. City of San Rafael (1974) 42 Cal. App.3d 230, 241-242 [116 Cal. Rptr. 733]; and see Comment, Computation of Attorney Fees in Structured Settlements: a Search for Basis (1985) 14 Cap. U.L.Rev. 567, 584-585 [hereafter Computation of Attorney Fees].)
California courts are familiar with this approach because it is routinely applied outside the MICRA context to determine personal injury awards involving loss of future earnings, payment of future medical expenses and other future damages. Another advantage to using the present value approach is that, theoretically at least, present value measures the true economic value of the judgment to the recipient. (Comment, Timing Payments of Attorney's Fees in Structured Settlements: Avoiding Problems With the "When Received" Approach (1988) 24 Willamette L.Rev. 993, 998 [hereafter Timing Payments of Attorney's Fees].) The present value approach is used in Washington in calculating attorney fees when a judgment includes periodic payments. (Ravsten v. Dept. of Labor and Industries (1987) 108 Wn.2d 143 [736 P.2d 265, 272-274].)
The problem with using the present value approach is that it has the potential of turning the fiduciary relationship of attorney and client into an adversarial one.
This adversarial relationship can arise because the discount rate and the plaintiff's life expectancy are factual issues which are subject to dispute and call for expert testimony, as the present case demonstrates. (See fn. 12, post.) The appropriate rate of discount may be subject to considerable dispute given the wide range of interest rates in the recent past and the inherent difficulty in predicting future economic trends. (Perez v. Pappas (1983) 98 Wn.2d 835 [659 P.2d 475, 478]; Matter of Estate of Muccini, supra, 460 N.Y.S.2d at p. 682; Henderson, supra, 32 Ariz. L.Rev. at p. 49.) Even a 1 percent change in the discount rate can drastically affect the present value of a stream of payments. (Timing Payments of Attorney's Fees, supra, 24 Williamette L.Rev. at p. 1000.) Therefore, the attorney will benefit from expert predictions of low future interest rates because low future interest rates mean it will take a higher principal investment to generate the income *1451 the client will receive. The result will be a higher "present value" and a higher fee. The client, of course, will seek to produce experts who predict high future interest rates, resulting in a lower "present value" and a lower fee. Furthermore, because the value of the future payments depends in part on the client's life expectancy, there may be a dispute over whether a standard or substandard mortality table should be used and conflicting expert opinion over the client's life expectancy. (Henderson, supra, at p. 49.) One can easily imagine a hearing on attorney fees under section 6146 turning into a battle of experts with the attorney and client each retaining counsel to represent their interests. (See Schultz v. Harney (1994) 27 Cal. App.4th 1611 [33 Cal. Rptr.2d 276] [suit for recovery of attorney fees in excess of MICRA limits].)[12] We doubt this is what the Legislature had in mind when it enacted section 6146.
In addition, the present value approach invites the attorney to "beef up" the value of the periodic payments by including certain noncash benefits to the client such as the taxes the client will save over a lifetime by receiving periodic payments instead of investing a lump-sum payment and the management costs the client saves by not having to hire someone to manage a lump-sum investment. (Computation of Attorney Fees, supra, 14 Cap. U.L.Rev. at pp. 589-590; and see Schneider v. Kaiser Foundation Hospitals (1989) 215 Cal. App.3d 1311, 1319 & fn. 6 [264 Cal. Rptr. 227] [rejecting inclusion of such noncash benefits in calculation of present value of periodic payments].)
(10) As an alternative to the present value approach, many courts have adopted the cost approach. Under this approach, if the periodic payments are funded by an annuity, the cost of the annuity to the defendant is presumed to be the value of the periodic payments for purposes of determining the amount of attorney fees. (See, e.g., Schneider v. Kaiser Foundation Hospitals, supra, 215 Cal. App.3d at p. 1320; Wyatt v. United States (6th Cir.1986) 783 F.2d 45, 47 [86 A.L.R.Fed. 855]; Merendino v. FMC Corp. (1981) 181 N.J. Super. 503 [438 A.2d 365, 368]; Johnson v. Sears, Roebuck & Co., supra, 436 A.2d at p. 678; but see Hrimnak v. Watkins (1995) 38 Cal. App.4th 964, 979 [45 Cal. Rptr.2d 514]; Franck v. Polaris E-Z Go Div. of Textron, Inc. (1984) 157 Cal. App.3d 1107, 1121 [204 Cal. Rptr. 321] [declining to adopt the cost approach as the sole permissible measure of present value].)
*1452 Proponents of the cost approach claim it is superior to the present value approach for several reasons. While both approaches rely on discount rates and projections of life expectancy, in the cost approach these factors are determined by the marketplace while in the present value approach they must be determined by the court after hearing expert testimony which is often conflicting. The market price of the annuity, it is argued, is a more reliable "witness" to value than the expert economists and doctors called by the parties because insurance companies, unlike the parties' expert witnesses, survive by determining life expectancies and investing customers' premiums. (Timing Payments of Attorney's Fees, supra, 24 Williamette L.Rev. at p. 1005.) As one of the experts in this case acknowledged, by issuing an annuity policy the insurance company has "`put its money where its mouth is.'" Furthermore, the problem of determining the value of an award of future payments becomes more complicated when, as here, the plaintiff may never receive part of that award because all payments cease upon her death. While standard mortality tables assume the person will live to the age specified in the table, the cost of the annuity takes into account the possibility the person may live longer or shorter than the anticipated life expectancy and is priced accordingly. (Johnson v. Sears, Roebuck & Co., supra, 436 A.2d at p. 678.) Where, as in the present case, the periodic payments are contingent on the survival of the plaintiff, the cost approach reflects that uncertainty. (Henderson, supra, 32 Ariz. L.Rev. at p. 53.) The cost approach also reflects what the attorney has won for the client: the right to receive a source of future income to defray losses as they accrue. (Ibid.) Finally, proponents of the cost approach argue it removes the "uncertainty and contentiousness" in the calculation of attorney fees which may arise under the present value approach. (Schneider v. Kaiser Foundation Hospitals, supra, 215 Cal. App.3d at p. 1319; Henderson, supra, at pp. 52-53.) The annuity was obtained at a specific cost and that cost is presumed to be its value.
Despite its advantages, there are certain drawbacks to the use of the cost approach not the least of which, from the attorney's perspective, is that the cost approach consistently yields a lower value than the present value approach. (See, e.g., Johnson v. Sears, Roebuck & Co., supra, 436 A.2d at pp. 677-678; Merendino v. FMC Corp., supra, 438 A.2d at p. 368; Henderson, supra, 32 Ariz. L.Rev. at pp. 51-52.) The solvency of the carrier is also a concern  the value of an annuity from an insolvent insurer is zero. (7b) The Harney firm makes the additional argument the cost approach is not authorized by section 6146 subdivision (b) because that subdivision requires the determination of total value to be made by the court, not by the defendant and its insurers. This means the determination of value must be *1453 made on the basis of evidence admitted in a judicial proceeding, not on the basis of profit and loss calculations by the insurer. Furthermore, subdivision (a) of section 6146 provides for attorney fees as a percentage of the amount "recovered." The amount "recovered" is the amount of damages paid to the client, not the cost to the defendant of paying those damages. Finally, the Harney firm argues, the cost approach does not eliminate controversy over the value of periodic payments unless the cost of the annuity is conclusively presumed to equal their "total value"  an approach fraught with constitutional difficulties.
None of these arguments, we believe, is of sufficient weight to prevent the trial court from treating the cost of an annuity as the presumptive value of the periodic payments.
The solvency of the insurance carrier is not a significant concern in California given the provisions of Code of Civil Procedure section 667.7, subdivisions (a) and (b)(2) requiring, as a condition to authorizing periodic payments, adequate insurance or a bond to assure full payment of the damages and providing for penalties and damages in the event of a continuing pattern of missed payments.
The fact the cost approach generally yields a lower value than the present value approach, at least when the latter is calculated by the plaintiff's attorney, is not a ground for rejecting the cost approach. As explained above, both approaches require someone to make assumptions about life expectancy and future interest rates. These assumptions are likely to vary depending on who is making them.[13] (Henderson, supra, 32 Ariz. L.Rev. at p. 49, fn. 164 and see discussion ante, at pp. 1450-1451.) The weight to be given these assumptions is a matter within the discretion of the trial court.
We conclude, therefore, nothing in section 6146 prevents the trial court from using the cost approach to determine the presumptive value of periodic payments made through an annuity. We wish to make it clear, however, the plaintiff's attorney should be given the opportunity to show in a given case *1454 that the cost of the annuity does not reflect the reasonable present cash value of the periodic payments.[14] (Cf. Wyatt v. United States, supra, 783 F.2d at pp. 47, 50.) While use of the cost approach as a presumptive guidepost will not eliminate the potential for controversy over the value of periodic payments it will, we believe, produce the least amount of controversy because it is objective, simple and inexpensive to apply. (Schneider v. Kaiser Foundation Hospitals, supra, 215 Cal. App.3d at p. 1319.)[15]
To summarize, for purposes of calculating the maximum attorney fees allowable under section 6146 the "total value" of periodic payments is the present value of the product of the periodic payments multiplied by the number of years remaining in the plaintiff's life expectancy. Where the periodic payments are to be made through an annuity purchased by the defendant, the total value of these payments is the cost of the annuity, absent evidence to the contrary.

DISPOSITION
The order is affirmed and the matter is remanded to the trial court for further proceedings on the calculation of attorney fees consistent with the views expressed herein. The guardians of Mai Chi Nguyen are awarded costs on appeal from appellant. All other parties are to bear their own costs on appeal.
Lillie, P.J., and Woods (Fred), J., concurred.
A petition for a rehearing was denied January 5, 1996, and appellant's petition for review by the Supreme Court was denied March 14, 1996.
NOTES
[1] The Medical Injury Compensation Reform Act of 1975 (MICRA) limits the amount of a contingency fee an attorney may contract for and collect in a personal injury action against a health care provider based on professional negligence. (Bus. & Prof. Code, § 6146.) MICRA also provides in such an action, at the request of either party, future damages shall be ordered paid in whole or in part by periodic payments. (Code Civ. Proc., § 667.7.)
[2] The $1 million award for pain and suffering was subsequently reduced to $250,000 pursuant to Civil Code section 3333.2.
[3] Code of Civil Procedure section 667.7 provides in relevant part: "In any action for injury or damages against a provider of health care services, a superior court shall, at the request of either party, enter a judgment ordering that money damages or its equivalent for future damages of the judgment creditor be paid in whole or in part by periodic payments rather than by a lump sum payment if the award equals or exceeds fifty thousand dollars ($50,000) in future damages."
[4] All future statutory references are to the Business and Professions Code unless otherwise noted.
[5] Under section 6146 as it read at the time of the judgment, the maximum allowable attorneys fee was 40 percent of the first $50,000, 33 1/3 percent of the next $50,000, 25 percent of the next $100,000 and 10 percent of the remaining recovery. Thus, the effect of the trial court's order was that the Harney firm would receive 10 percent of each periodic payment for as long as Ms. Nguyen should live, be it seven years or seventy.
[6] We also note Mr. Harney is already in his 70's. Unless he can locate the legendary Shangri-La, he may not live to collect his fees regardless of how long Ms. Nguyen should survive.
[7] To date, the Harney firm has recovered $55,869.95 in attorney fees out of the initial cash payment to the plaintiff of $415,943.75. The firm has received no attorney fees based on the value of the periodic payments as this value has not yet been determined.
[8] As this example demonstrates, it is important that the trial court calculate the amount of attorney fees before the defendant purchases an annuity to fund the periodic payments. This allows the trial court to include a portion of future damages in the defendant's lump-sum payment, e.g., to capitalize a percentage of the future periodic payments where necessary to assure there are sufficient funds presently available to pay the plaintiff's attorney fees. If the defendant purchases the annuity before the attorney fees are calculated, the trial court and the plaintiff are faced with a fait accompli in terms of the amount that can be included in the lump-sum damage award. If the resulting lump-sum award is insufficient to permit payment of plaintiff's attorney fees, plaintiff's attorney faces the prospect of receiving the fee in small bites over a lengthy period or, possibly, never collecting it at all.
[9] In some cases, the lump-sum recovery for past damages of various sorts may provide a sufficient fund out of which to allocate the entire attorney fee award. In that instance, it would be unnecessary to allocate any portion of the periodic payment award to attorney fees.
[10] It should also be noted an earlier version of section 6146 provided: "The final judgment shall require the defendant to deduct from the award to the plaintiff the amount of the award which represents attorney's fees and to pay the fees directly to such attorney." (Assem. Bill No. 1, § 24.2, as amended in Assem., June 6, 1975.) This provision was stricken from the final version of the statute, suggesting the Legislature might have been aware of the problem attorneys could face in recovering their fees but decided to leave its resolution to the parties and the courts.
[11] The requirement the court shall place a "total value" on the payments based upon the plaintiff's "projected life expectancy" eliminates the approach originally taken by the trial court which was to simply have the guardian pay the Harney firm the applicable MICRA percentage out of each periodic payment as it was received for as long as Ms. Nguyen lived. This percentage-when-received approach has been approved in some jurisdictions (Matter of Estate of Muccini (1983) 460 118 Misc.2d 38 [N.Y.S.2d 680, 683]; Cardenas v. Ramsey County (Minn. 1982) 322 N.W.2d 191, 193 [31 A.L.R.4th 89]), and disapproved in others (Johnson v. Sears, Roebuck & Co. (1981) 29 Pa.Super. 625 [436 A.2d 675, 678]; Robak v. United States (7th Cir.1981) 658 F.2d 471, 480, fn. 28.) Whatever the merits of this approach, it cannot be used in California because it does not involve a determination of the "total value" of the periodic payments nor the "projected life expectancy of the plaintiff," as required under section 6146, subdivision (b).
[12] In Roa v. Lodi Medical Group, Inc. (1985) 37 Cal.3d 920, 925, footnote 4 [211 Cal. Rptr. 77, 695 P.2d 164] the court recognized the potential conflict of interest between plaintiffs and their attorneys over the calculation of attorney fees under MICRA could call for separate representation of their interests. This is not a problem in the present case because Ms. Nguyen, through her guardians, is already represented by separate counsel.
[13] This case presents a classic example of how assumptions about life expectancy can vary depending on who is doing the assuming. At the first hearing on attorney fees, the Harney firm presented expert testimony Ms. Nguyen had a life expectancy of 80 years. The County produced testimony the company providing the annuity projected her life expectancy as 7.7 years. The rate of interest used in the calculation also affects the result. Insurance companies, as a rule, discount future sums at a relatively higher rate than plaintiffs' attorneys. (Timing Payments of Attorney's Fees, supra, 24 Williamette L.Rev. at p. 1005.) Also, there may be a significant difference between the interest rate at the time the present value calculation is being made and what it was at the time the annuity was bid (as interest rates go up the cost of purchasing an annuity goes down).
[14] There is some merit to the Harney firm's concern about the value of periodic payments being determined by the defendant and its insurer. The premium the insurer charges a particular defendant for the annuity may be less than what the insurer would charge another defendant or the plaintiff for the same annuity. A large governmental agency which frequently purchases such annuities may be able to negotiate a lower premium or an insurer seeking to attract such an agency's business might offer to discount the premium. Facts such as these should be brought to the trial court's attention when determining the value of the periodic payments on a cost basis.
[15] In this case, the Harney firm argues that if it has to accept payment of its attorney fees out of the periodic payments it should be entitled to interest. We disagree because an inflation factor is built into the periodic payments themselves. Thus the 10 percent of the payment the Harney firm receives has already been adjusted for inflation.